A94A0146. GWINNETT I LIMITED PARTNERSHIP
v. GWINNETT COUNTY et al.
(447 SE2d 679)

ANDREWS, Judge.

In 1989, the Gwinnett County Board of Tax Assessors placed a valuation of $6,001,440 and a tax assessment of $2,400,570 on an apartment complex. The owner at the time of the assessment did not appeal the valuation or assessment to the Board of Equalization

within the 30-day appeal period. In January 1990, Gwinnett I Limited purchased the property at a foreclosure sale for $3,000,000. While contending that the assessment was illegal and erroneous because of improper valuation, lack of uniformity, and lack of equalization, Gwinnett I paid the Gwinnett County Tax Commissioner $98,416 under protest in May 1990. A few days later, Gwinnett I followed the procedure set forth in OCGA § 48-5-380 and requested a refund of $42,320 from the Tax Commissioner. After the request was denied in August 1991, Gwinnett I filed this action a year later in Gwinnett County Superior Court, also under OCGA § 48-5-380, seeking a refund. Gwinnett County moved for summary judgment, claiming Gwinnett I was barred from maintaining an action for a tax refund under OCGA § 48-5-380 because Gwinnett I did not first appeal to the Gwinnett County Board of Equalization as required by OCGA § 48-5-311. Gwinnett I appeals from the trial court's order granting summary judgment in favor of Gwinnett County.

Gwinnett I, conceding that no material issues of fact exist, contends summary judgment was not authorized because OCGA § 48-5-380 authorizes it to seek a refund of overpaid taxes which were erroneously and illegally assessed. Gwinnett I argues that it overpaid taxes because the property was not assessed at fair market value and the valuation was not fairly and justly equalized.

OCGA § 48-5-380 (a) provides that taxpayers may obtain a refund of taxes paid to a county or municipality for "any and all taxes and license fees which are determined to have been erroneously or illegally assessed and collected from the taxpayers . . . or which are determined to have been voluntarily or involuntarily overpaid by the taxpayers." The claim is to be filed with "the governing authority," in this case the county commissioners, within three years after the date of payment. OCGA § 48-5-380 (b). If the governing authority denies the claim, the taxpayer may bring an action for a refund in superior court. OCGA § 48-5-380; *Marconi Avionics v. DeKalb County*, 165 Ga. App. 628, 629 (302 SE2d 384) (1983). On the other hand, OCGA § 48-5-311 (e) provides a method by which a taxpayer may appeal from an assessment, within 30 days of the assessment notice, to the Board of Equalization as to matters of taxability, uniformity, and value. OCGA § 48-5-311 (f). The taxpayer may appeal the decision of the Board of Equalization by bringing an action in superior court. OCGA § 48-5-311 (f) (1).

We have previously construed OCGA § 48-5-380 in conjunction with OCGA § 48-5-311 in *Marconi Avionics*, supra. As we noted in *Marconi Avionics*, "[t]he refund statute does not state that the taxpayer must first have complied with OCGA § 48-5-311 (e) [cit.] before it is entitled to a refund of improperly paid taxes. Indeed, the wording of OCGA § 48-5-380 (a) [cit.] giving the taxpayer the right to

a refund of 'any and all taxes . . . which are determined to have been . . . voluntarily or involuntarily overpaid,' belies any attempt to place such a severe, artificial, and non-statutory restriction on that right." Id. at 629. Interpreting the refund statute according to its literal and logical meaning, we concluded that "it applies to all property 'erroneously or illegally assessed' and taxes 'voluntarily or involuntarily overpaid,' for whatever reason," and that "a taxpayer need not comply with the appeal procedure provided in OCGA § 48-5-311 (e) [cit.] prior to proceeding under OCGA § 48-5-380. [Cit.]" Id. at 630. "There is nothing in [OCGA § 48-5-380] or in [OCGA § 48-5-311] that precludes consideration of [matters concerning valuation, uniformity or equalization of assessments] if that forms the basis of the allegation that the property was erroneously or illegally assessed or that there was an overpayment." See id. at 631.

The dissent attempts to distinguish *Marconi Avionics* on the basis that it dealt with a challenge to taxability instead of the excessive valuation, uniformity and equalization claims asserted by Gwinnett I, and narrowly construes OCGA § 48-5-380 to mean that refunds may be sought as to matters concerning "factual error or illegality" but not as to matters concerning valuation, uniformity and equalization of assessments, which the dissent characterizes as matters of opinion subject to appeal under OCGA § 48-5-311. Given the broad and plain language of OCGA § 48-5-380 authorizing refunds for taxes "erroneously or illegally assessed . . . or . . . voluntarily or involuntarily overpaid by the taxpayers," there is no basis for the narrow statutory construction advocated by the dissent and no basis for distinguishing *Marconi Avionics*. Moreover, since OCGA § 48-5-311 does not differentiate between appeals based on taxability and those based upon value or uniformity, there is no basis for making such a distinction in this case.

Additionally, the broad statutory construction we adopted in *Marconi Avionics* is consistent with the common-law remedy codified by OCGA § 48-5-380. Prior to the enactment of OCGA § 48-5-380, the right to seek a refund of ad valorem taxes existed at common law, not only for illegally assessed taxes, but also for excessive valuation where the taxpayer conceded some amount of tax was due, protested the amount assessed, and paid the taxes under the trial court's protective order. *Blackmon v. Ewing*, 231 Ga. 239 (201 SE2d 138) (1973). "[T]he right to sue for refund has always been an available remedy at common law, and the only effect of having such right expressly recognized by statute has been to remove the defense of voluntary payment." *Hawes v. Smith*, 120 Ga. App. 158 (169 SE2d 823) (1969); *Town of Lyerly v. Short*, 234 Ga. 877, 879 (218 SE2d 588) (1975). Even if it could be argued that OCGA § 48-5-380 is capable of a different construction, the statute was properly construed in *Marconi*

*Avionics* in a manner consistent with the common law. See *Intl. Indem. Co. v. Bakco Acceptance*, 172 Ga. App. 28, 32 (322 SE2d 78) (1984).

Finally, construing OCGA § 48-5-380 to recognize the taxpayer's right to seek a refund in the present case is consistent with similar refund remedies applicable to State taxes under OCGA § 48-2-35 (former Code Sections 92-8436 and 91A-245). See *Ingalls Iron Works Co. v. Blackmon*, 133 Ga. App. 164 (210 SE2d 377) (1974); *Gainesville-Hall County Economic Opportunity Organization v. Blackmon*, 233 Ga. 507 (212 SE2d 341) (1975).

Gwinnett I had a right to seek a refund under OCGA § 48-5-380 and the trial court erred in granting summary judgment in favor of Gwinnett County. The case must be remanded for consideration of the remaining issue of whether Gwinnett I is entitled to a refund.

*Judgment reversed and case remanded with direction. Pope, C. J., Birdsong, P. J., Johnson, Blackburn, Smith, JJ., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., and Beasley, P. J., dissent.*

BEASLEY, Presiding Judge, dissenting.

I respectfully dissent because the trial court correctly concluded that the defending county, county commissioners, and members of the county board of tax assessors were entitled to summary judgment in this action for a 1989 ad valorem real property tax refund.

As the majority notes, both OCGA §§ 48-5-380 and 48-5-311 come into play in this case. Additionally, the legislative scheme of tax appeals can be seen in OCGA § 48-5-306 (b) which requires that the notice of changes in property tax assessment must state "If you do not file an appeal by this date, your right to file an appeal will be lost." This appeal may encompass "matters of taxability, uniformity of assessment, and value, and, for residents, as to denials of homestead exemptions." OCGA § 48-5-311 (e) (1). We are confined to an application of the statutory scheme which the legislature has adopted. "[T]he cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 467 (62 SE2d 209) (1950).

These sections of the law must be construed in pari materia, in connection and in harmony with each other. *Ga. Marble Co. v. Whitlock*, 260 Ga. 350, 354 (1) (d) (392 SE2d 881) (1990); *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299) (1981). The assessment for a particular year is a matter of opinion; it is not a matter of factual error or illegality so as to be subject to a years-later challenge under OCGA § 48-5-380 with respect to valuation, uniformity, and/or

equalization. Taxability (whether the property is subject to taxation or not), which is subject to an erroneous determination or mistake of fact, is not a question of value and thus a mistake in this regard is subject to remedy under OCGA § 48-5-380 in addition to OCGA § 48-5-311. See Black's Law Dictionary with respect to the definitions of "error," "erroneous assessment," and "erroneous or illegal tax."

Plaintiff was not the property owner in 1988 when the assessment was made, or in 1989 when it was the basis for the 1989 tax. The then-property owner failed to challenge the assessment within the time provided, despite notice of its opportunity. That fixed the assessment for that year of 1989 as the basis for the tax, insofar as valuation, uniformity, and equalization were concerned. Plaintiff, the purchaser in 1990, actually paid the tax resulting from the assessment, delinquent and with penalty because its predecessor-in-title, the 1989 owner, had not paid it. By doing so, it did not gain a right, through the refund statute, to contest the assessment amount for the 1989 tax which had been lost by the predecessor's failure to utilize OCGA § 48-5-311.

The legislature has provided an expedient procedure for the challenge of valuation, uniformity, and equalization of assessments in OCGA §§ 48-5-311 (e) and (f) and 48-5-306 because of the annually recurring nature of the ad valorem tax. Plaintiff cannot avoid the finality of the time which has been clearly provided by the legislature for this purpose, by invoking OCGA § 48-5-380, which is provided for other purposes.

*Marconi Avionics v. DeKalb County*, 165 Ga. App. 628 (302 SE2d 384) (1983), is inapposite. The question was whether the trial court properly granted a dismissal, which the appellate court ultimately viewed as a summary judgment. The judgment was reversed because it was held that a proper action under OCGA § 48-5-380 does not require, as a predicate, the exhaustion of the remedy provided under OCGA § 48-5-311 (e). Obviously, as recognized by the court in that case, to so require "would virtually eliminate refunds when the mistake of overpayment is discovered only after the taxes are paid . . . [and thus] render most tax payments unrecoverable." The challenge was to taxability, in that the taxpayer claimed the property was exempt. Here, on the other hand, the claim is that the assessment was not based on the true market value and was not uniform and equalized with similarly situated properties in 1989. It is not a matter of failing to *first* follow the procedure in OCGA § 48-5-311 (e) before proceeding with an action under OCGA § 48-5-380, which *Avionics* held was unnecessary in a proper OCGA § 48-5-380 refund case. Rather, it is a matter of the exclusive remedy for challenging valuation, uniformity, and equalization of the 1989 assessment having been foreclosed by the passage of time.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 15, 1994 —
RECONSIDERATION DENIED JULY 29, 1994 — 

*Alston & Bird, T. Michael Tennant, Lori P. Hughes, Timothy J. Peaden,* for appellant.

*Frederick D. Burkey, Caryl B. Sumner, M. Van Stephens II,* for appellees.