S94G1822. GWINNETT COUNTY, GEORGIA et al.
v. GWINNETT I LIMITED PARTNERSHIP.
(458 SE2d 632)

BENHAM, Presiding Justice.

In 1990, Gwinnett I Limited Partnership (GILP) bought an apartment complex in a foreclosure sale and paid the 1989 property taxes under protest. Although the previous owner had not challenged the property tax assessment when it was made, GILP filed a claim for a refund of almost half the tax it had paid, asserting that the 1989 assessment was illegal and erroneous because of improper valuation, lack of uniformity, and lack of equalization. When the claim was denied, GILP filed a refund suit against Gwinnett County and the county officials involved (collectively, the County). The trial court granted summary judgment to the County, concluding that issues of valuation, uniformity, and equalization could be addressed only by means of the appeal process provided in OCGA § 48-5-311. The Court of Appeals, relying largely on *Marconi Avionics v. DeKalb County*, 165 Ga. App. 628 (302 SE2d 384) (1983), reversed that judgment, holding that OCGA § 48-5-311 is not the exclusive method of challenging assessments on the grounds raised by GILP. *Gwinnett I Ltd. Partnership v. Gwinnett County*, 214 Ga. App. 248 (447 SE2d 679) (1994). We granted the writ of certiorari to consider whether a taxpayer may raise issues of valuation, uniformity, and equalization in an action under OCGA § 48-5-380 seeking a refund of ad valorem real property taxes. For the reasons that follow, we conclude that those issues may be raised in such a refund action, but only if the claim is based on an assertion of illegality in the procedure employed or on a factual inaccuracy in the record.

In *Marconi Avionics*, supra, the Court of Appeals held that a refund action was an appropriate vehicle for challenging the taxability of property, notwithstanding the taxpayer's failure to follow the appellate process which specifically includes taxability as an issue appropriate for appeal. See OCGA § 48-5-311 (e) (1). In the present case, the Court of Appeals concluded that there is no basis for distinguishing between taxability and the other grounds mentioned in § 48-5-311 (e) (1), value and uniformity. We agree with the Court of Appeals that there is no valid distinction which would warrant forbidding refund actions based on the two latter grounds but not those based on the first.

There is, however, a distinction to be drawn between the two

types of action. The difference between the two statutory procedures may most readily be seen in the nature of the proceedings. A property owner who receives an assessment and is dissatisfied with it or believes the assessed property is not taxable or that uniformity and equalization have not been achieved may take up the issue under the procedure supplied by § 48-5-311, where a mutually acceptable resolution is sought by expedited processes less formal than litigation. Although that procedure may result in litigation and lead to an adjudication, it does so only where the parties are not able to reach agreement. A claim under the refund statute, on the other hand, starts in the formal adversarial context of making a claim for relief based on an assertion that taxes have been collected through error or illegality, and proceeds from there to superior court. Also basic to the differing natures of the two procedures are the time periods involved. An appeal from an assessment is governed by time periods measured in days, and jury trials in such appeals are to be heard at the first term following the filing of the appeal. OCGA § 48-5-311 (e) (2) (A) and (g) (4) (A). A refund action, though, may be brought any time within three years of the payment of taxes (OCGA § 48-5-380 (b)); that time is extended further by provisions giving the governing authority of the county a year to decide the claim (assuming there are no extensions, which the statute also permits) and giving the taxpayer another year after that denial to file the action in superior court (id., subsection (b)); and there is no statutory requirement that the action be expedited in superior court.

We conclude that the legislature intended the two distinct procedures to serve two distinct purposes. The appeal process under § 48-5-311 is intended to provide the most expeditious resolution of a taxpayer's dissatisfaction with an assessment, preferably before taxes are paid. It is reasonable for all issues which might impact on the assessment to be within the scope of that proceeding. There needs to be, however, some procedure in place to protect taxpayers from later-discovered defects in the assessment process which have resulted in taxes being "erroneously or illegally assessed and collected." The Court of Appeals correctly held in *Marconi* that § 48-5-380 provides such a procedure. But to suppose that the two very different procedures are available in every case without regard to the underlying basis of the taxpayer's challenge would render the appeal process under § 48-5-311, with its short time periods, meaningless. We are bound to seek an interpretation of statutes which will not have that effect. *Crossroads Bank of Ga. v. Corim, Inc.*, 262 Ga. 364, 366 (418 SE2d 601) (1992). Accordingly, we conclude that while the appeal process of § 48-5-311 is available to address any asserted error in an ad valorem real property tax assessment, the refund process established by § 48-5-380 is intended only to correct errors of fact or law

which have resulted in erroneous or illegal taxation.

Viewed in that way, the determinative factor in deciding whether an action seeking a refund of ad valorem real property taxes may be maintained is not the general nature of the ground asserted, but the underlying facts supporting the asserted ground. If the taxpayer alleges that the assessment is based on matters of fact in the record which are inaccurate, or that the assessment was reached by the use of illegal procedures, then the taxpayer has asserted a claim that the taxes were "erroneously or illegally assessed and collected," which is what § 48-5-380 addresses. A claim based on mere dissatisfaction with an assessment, or on an assertion that the assessors, although using correct procedures, did not take into account matters which the taxpayer believes should have been considered (e.g., different comparable sales for the purpose of establishing value), is not, however, one which asserts that an assessment is erroneous or illegal within the meaning of § 48-5-380.

Turning to the record of the present case, it is apparent that GILP's claim for a refund of taxes is based not on any inaccuracy in the factual record or any illegality in the procedure used to reach an assessment, but on a disagreement with the amount of the assessment. In discovery responses, GILP failed to set forth any factual basis for its claim, asserting that the amount it paid in a foreclosure sale in 1990 established the fair market value of the property in 1989. That being so, it is apparent from the record that GILP's claim is not one cognizable as a refund action under § 48-5-380 and that the County was entitled to summary judgment. The trial court, therefore, was correct in awarding summary judgment to the County, albeit not for the reason stated. Since a judgment right for any reason should be affirmed (*Precise v. City of Rossville*, 261 Ga. 210 (3) (403 SE2d 47) (1991)), the judgment of the Court of Appeals must be reversed.

*Judgment reversed. Hunt, C. J., Fletcher, Hunstein, Carley, Thompson, JJ., and Judge L. A. McConnell concur. Sears, J., disqualified.*

DECIDED JUNE 30, 1995 —
RECONSIDERATION DENIED JULY 28, 1995.

*Caryl B. Sumner, M. Van Stephens II, Frederick D. Burkey,* for appellants.

*Alston & Bird, T. Michael Tennant, Timothy J. Peaden, Lori P. Hughes, G. Conley Ingram,* for appellee.

*Jonathan A. Weintraub, Thomas J. Mahoney, Jr., Emily E. Garrard, James F. Grubiak, Walter E. Sumner, Smith, Gambrell &*

*Russell, John A. Blackmon, Edward H. Wasmuth, Jr.,* amici curiae.