A97A1330. BRIAN REALTY CORPORATION v. DeKALB COUNTY et al.
(493 SE2d 595)

RUFFIN, Judge.

This action involves Brian Realty Corporation's ("Brian Realty") request for a refund of 1992 ad valorem taxes paid on property located in DeKalb County. The superior court granted the county's motion for summary judgment and denied Brian Realty's motion for partial summary judgment. Brian Realty appealed, and for the following reasons, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.]" *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The record shows that in 1986, the owner of approximately 71.73 acres, known as the Perimeter Summit/Lake Hearn Development ("Lake Hearn Property"), sought to rezone the property from residential to office-institutional. The DeKalb County Board of Commissioners rezoned the property to "OI (conditional)," meaning office-institutional with conditions. One of the conditions imposed in 1986 required the owner to set aside approximately 23 acres for a perpetual conservation easement.

The property sat untouched for several years until May 1991, when the new owner of the property, Dalford Associates, L.P. ("Dalford"), filed an "Application for Conditional Zoning Alteration." The county approved the change in conditions without altering the conditional O&I zoning designation. The conditions affecting the property were listed in the county board of commissioners' minutes that authorized the change in conditions as well as on an attachment to the minutes. Included in this list of conditions was the 23-acre conservation easement, as well as the requirement that the owner set aside an additional 20 acres for a "10-year restricted area" conservation easement.[1] These two zoning conditions provided that no devel-

---

[1] It is unclear from the record whether this ten-year conservation easement was imposed as a condition in 1986 or at some point between 1986 and 1991. However, it is clear that this zoning condition, as well as the zoning condition requiring the 23-acre perpetual

opment permits could be issued until the developer provided the DeKalb County Planning Commission with evidence that the conservation easements had been recorded with the superior court. The easements were not recorded with the superior court until May 1992.

In assessing ad valorem taxes for 1992, the county valued the entire 71.73-acre tract as unimproved land zoned office-institutional. In 1993, after the easement documents were recorded, the county reassessed the taxes, taking into account the recorded easements. On February 8, 1994, the current owner of the Lake Hearn Property, Brian Realty, filed with the county a request under OCGA § 48-5-380 (b) for a refund of taxes paid for 1992, claiming the county failed to consider the zoning conditions requiring the easements that restricted Brian Realty's use of over 40 acres of the property. After a year passed with no resolution from the county concerning the request, Brian Realty filed suit in superior court pursuant to OCGA § 48-5-380 (c) seeking a refund of not less than $350,000. Brian Realty also raised a 42 USC § 1983 claim, arguing that the "illegal assessment" denied Brian Realty its due process rights and amounted to an illegal taking.

The defendants, DeKalb County and members of the DeKalb County Board of Tax Assessors (collectively "the county"), moved for summary judgment, arguing, inter alia, that Brian Realty's avenue of recourse was through the procedures of OCGA § 48-5-311, not OCGA § 48-5-380. Brian Realty responded and moved for partial summary judgment, seeking a ruling that it was entitled to a refund because the county failed to consider the zoning conditions.

In granting summary judgment to the county, the superior court ruled that "there was no error of fact on the tax records as of January 1, 1992 because the [Office & Institutional] designation was correct and the easements were not yet recorded." The court concluded that while the zoning designation was a matter of fact, the zoning conditions were not. The court said how the easement conditions affected the value of the property was a matter of opinion. Relying on *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, 265 Ga. 645 (458 SE2d 632) (1995), the superior court ruled there was no viable action under OCGA § 48-5-380. Brian Realty appealed from this decision.

1. Before addressing the merits of this appeal, we must consider whether Brian Realty was the real party in interest. The county argues that Brian Realty did not have standing to bring this tax appeal because Dalford was the owner of the property at the time of the 1992 assessment and the GE Pension Trust ("GE") paid the taxes

---

easement, were in place for the 1992 tax year.

on the property for Brian Realty.

The record shows that while Dalford was listed as owner, it was a legally defunct limited partnership under Delaware law at that time because it only had one partner, Brian Realty. See 6 Del. Code § 17-101 (8) (a limited partnership is a partnership formed by two or more persons). For purposes of winding up its affairs, Dalford quit-claimed all of its interest in the property to Brian Realty on April 10, 1992, which included any interest Dalford would have had to bring the refund action as the owner of the property.

As for GE, although the taxes on the property were paid on checks issued by the trust, Brian Realty is a wholly-owned subsidiary of the trust, according to the GE trustee. GE's auditor further stated in an affidavit that GE is the sole shareholder of Brian Realty, and that the checks for the 1992 taxes were written on behalf of Brian Realty to pay Brian Realty's debts. The auditor stated the payments were assessed against Brian Realty's account, and were "included and deducted as property tax expense on the 1992 income tax returns for Brian Realty." Given the trustee's and auditor's statements, we are satisfied that Brian Realty is the "taxpayer" for purposes of seeking the refund. The county has not offered any evidence contradicting the fact that while GE actually issued the checks, Brian Realty actually paid the taxes since the expenses were charged against Brian Realty's account.

Even if GE was a proper party to the suit, it is well established that "summary judgment cannot properly be granted to a defendant on the basis of a real-party-in-interest objection. [Cit.]" *Dept. of Human Resources v. Holland*, 263 Ga. 885, 887 (2) (440 SE2d 9) (1994). The proper remedy is dismissal, but only after "a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. . . ." OCGA § 9-11-17 (a).

Finally, in that it is peripherally related to the question of the real party in interest, we address the county's argument that Brian Realty improperly assigned its interests in the refund action to a tax consulting firm, Winthrop & Jones. This argument is contradicted by the clear terms of the agreement between Brian Realty and Winthrop & Jones. Winthrop & Jones was hired to pursue the tax refund on Brian Realty's behalf. The refund claim was not assigned in full to the consulting firm; rather, Winthrop & Jones was only to receive a percentage of the amount of the refund it obtained for Brian Realty. Consequently, there was no improper assignment of the refund, which OCGA § 48-5-380 (b) prohibits.

2. We now turn to the merits of Brian Realty's appeal to determine whether it properly pursued its tax refund claim under OCGA § 48-5-380. In *Gwinnett*, supra, the Supreme Court of Georgia deline-

ated the differences between the procedures for appealing ad valorem taxes under OCGA § 48-5-311 and those under OCGA § 48-5-380. The court held that "while the appeal process of OCGA § 48-5-311 is available to address any asserted error in an ad valorem real property tax assessment, the refund process established by OCGA § 48-5-380 is intended only to correct errors of fact or law which have resulted in erroneous or illegal taxation." Id. at 646-647. "If the taxpayer alleges that the assessment is based on matters of fact in the record which are inaccurate, or that the assessment was reached by the use of illegal procedures, then the taxpayer has asserted a claim that the taxes were 'erroneously or illegally assessed and collected,' which is what [OCGA] § 48-5-380 addresses. A claim based on mere dissatisfaction with an assessment . . . is not . . . one which asserts that an assessment is erroneous or illegal within the meaning of [OCGA] § 48-5-380." Id. at 647.

For ad valorem tax purposes, "[a]ll property *shall* be returned for taxation at its *fair market value.* . . ." (Emphasis supplied.) OCGA § 48-5-6. The county's tax assessor was required to ascertain the fair market value of Brian Realty's property, which is the "amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale." OCGA § 48-5-2 (3). Among other factors to be considered in determining fair market value, OCGA § 48-5-2 (3) (B) (i) provides that the tax assessors *shall* consider *"[e]xisting zoning of property."* (Emphasis supplied.) "Existing zoning of property" would include conditional zoning, which has been ruled valid in Georgia. See *Warshaw v. City of Atlanta*, 250 Ga. 535, 536 (299 SE2d 552) (1983); *Cross v. Hall County*, 238 Ga. 709, 712 (2) (235 SE2d 379) (1977).

Without any doubt Brian Realty's property was conditionally rezoned. The county board of commissioners listed the zoning as conditional zoning and "OI (conditional)." When property is conditionally rezoned, the conditions include "all of those stipulations made upon the rezoning hearing and entered in the official and public minutes of the board of commissioners." *Ervin Co. v. Brown*, 228 Ga. 14, 15 (183 SE2d 743) (1971). The easement conditions were included in the attachment to the county board of commissioners' official minutes approving the 1991 alteration of the property's "OI (conditional)" zoning status. The easement conditions dramatically affected the amount of acreage available to Brian Realty for development, and were imposed to protect the neighbors and ameliorate the effect of the zoning change. See *Warshaw*, supra at 536. Brian Realty nor any subsequent purchaser could proceed with development of the property unless the zoning conditions were met or altered. The conditions were an integral part of the zoning and thus had to be considered pursuant to OCGA § 48-5-2 (3).

The county argues that it was not appropriate to consider the easement conditions until they were recorded with the superior court. The county is correct in pointing out that once conservation easements, as imposed here, are recorded, the property owner has a right to have his property reassessed pursuant to OCGA § 44-10-5 (currently OCGA § 44-10-8). However, that does not mean that prior to recordation of the conservation easements, the zoning conditions requiring the easements do not affect the fair market value of the property for ad valorem tax purposes.

We agree with the superior court that no action under OCGA § 48-5-380 would lie if the tax assessors considered the conditions in making the assessment, for *how* the conditions affect the property's value is a matter of opinion, not an inaccurate matter of fact. See *Gwinnett*, supra. However, if the tax assessors totally failed to consider the existing conditional zoning in ascertaining value, as mandated by OCGA § 48-5-2, then "the assessment was reached by the use of illegal procedures . . . ," for which a refund action would lie. Id. at 647. Brian Realty's claim is not based on "mere dissatisfaction with an assessment . . . ," but rather on an alleged error of law resulting in erroneous or illegal taxation. Id.

Accordingly, an issue of fact remains concerning whether the county's tax assessor considered the existing zoning conditions in making the assessment, and as such, summary judgment to the county regarding Brian Realty's claim under OCGA § 48-5-380 was not appropriate. *Lau's Corp.*, supra.

3. The superior court correctly granted summary judgment to the county on Brian Realty's 42 USC § 1983 claim, as there was an adequate remedy under Georgia law. See *Gwinnett County Bd. of Tax Assessors v. Network Publications*, 208 Ga. App. 15, 17 (1) (429 SE2d 696) (1993). The procedures of either OCGA § 48-5-311 or § 48-5-380 provide Brian Realty with a full hearing and a judicial determination at which it could raise any and all constitutional objections to the tax. See id.

4. Furthermore, there was no illegal taking of the Lake Hearn property, as Brian Realty maintains. Brian Realty and its predecessors in interest were aware of and agreed to the zoning conditions. The county did not remove land from Brian Realty's possession for public use. The only "taking" of which Brian Realty is complaining is its overpayment of taxes due to the county's assessment. Just as we held in *Parian Lodge v. DeKalb County*, 225 Ga. App. 853, 855-856 (485 SE2d 545) (1997), no legal basis exists for a claim that payment of the ad valorem tax amounted to an unconstitutional taking of property.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 5, 1997 —

*Knapp & Street, Halsey G. Knapp, Jr.,* for appellant.

*Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell, Boyce, Ekonomou & Atkinson, John E. Underwood, Jonathan A. Weintraub, Lee W. Fitzpatrick,* for appellees.