A03A0242. JONES v. BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA et al.
(585 SE2d 138)

MIKELL, Judge.

Kenneth Jones was employed by Augusta State University ("ASU") as its Director of Public Safety. ASU terminated Jones's employment on September 30, 1999. Jones sued the Board of Regents of the University System of Georgia (the "Board"), ASU president William Bloodworth, and ASU vice-president Fred Barnabei, asserting claims for violation of (1) his civil rights under 42 USC § 1983, (2) his right to due process and free speech under the Georgia Constitution, and (3) OCGA § 45-1-4, the Georgia "whistleblower" statute. The trial court granted the defendants' motion for summary judgment. For reasons that follow, we affirm the grant of summary judgment on all claims against Barnabei and Bloodworth. We also affirm the grant of summary judgment to the Board with respect to Jones's claims under 42 USC § 1983 and the Georgia Constitution. However, we reverse the grant of summary judgment to the Board on Jones's claim under OCGA § 45-1-4, holding that material issues of fact remain for a jury to decide.

To prevail on a motion for summary judgment, the moving party

---

must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim.[2] Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.[3]

Jones contends that he was forced to resign from ASU because Barnabei and Bloodworth disapproved of an investigation by Jones into the criminal activities of three ASU employees. The defendants contend that Barnabei asked Jones to submit his resignation because Jones was verbally abusive toward a subordinate employee.

The record, viewed most favorably to Jones, shows that in September 1998, Jones began investigating a series of thefts from the ASU campus. In his affidavit, Jones averred that he had received a tip that Bescey and Goble, two ASU public safety officers employed under Jones's supervision, were in possession of property missing from ASU, including electronic equipment, grass seed, and copper wire. In late January 1999, Jones began investigating a third ASU security officer, Arrington, in connection with theft of copper wire from ASU. Jones deposed that Bescey and Goble were arrested on January 29, 1999.

During the investigation, Jones learned that several Richmond County marshals had received stolen property associated with the thefts from ASU, including baseball jerseys and media equipment. Jones deposed that Barnabei, Jones's supervisor, ordered him to stop investigating the Richmond County marshals so as to not alienate the ASU Police Department from other police departments in the area. Jones averred that Barnabei told him not to investigate Officer Arrington; that on March 12, 1999, Barnabei asked Jones to turn in his car, gun, and credentials; and that he believed Barnabei took this action to stop Jones's investigation.

The defendants maintain that Jones resigned following a pattern of incidents in which he abused fellow employees. Barnabei deposed that in 1995 he disciplined Jones for a verbal outburst against another ASU employee, and that Jones acknowledged in writing that another outburst of temper would be grounds for his dismissal. In February or March 1999, Barnabei received a report that Jones had

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] Id.

[3] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

"yelled . . . and screamed" for 30 minutes at a subordinate employee. Barnabei deposed that he called Jones into his office and told him,

> what I have in front of me right now is a report that you again lost your temper. And as a result of your losing your temper I'm going to give you the option of resigning, or your contract will not be renewed in July. That's why he was terminated.

Barnabei gave Jones the option to remain employed with ASU for an additional six months, until the end of September, 1999. Jones submitted his resignation on March 16, 1999, effective September 30, 1999, and was immediately relieved of his security-related duties. On September 28, 1999, Jones sent a letter to Bloodworth that he wished to withdraw his resignation. Bloodworth declined Jones's request.

1. Jones claims the trial court committed numerous errors in its review of the record. He complains that the trial court weighed the evidence and made findings of fact and credibility determinations, and that the court did not view the evidence in the light most favorable to Jones. For purposes of this appeal, however, we view the record de novo.[4] Summary judgment may be affirmed if it is right for any reason.[5]

2. Jones contends that the trial court erred in granting summary judgment to the defendants on his claim that he was dismissed for exercising his constitutional right to free speech, in violation of 42 USC § 1983.[6] We disagree.

42 USC § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A plaintiff in a § 1983 action must show (1) "that he has been deprived of a right secured by the constitution and laws of the United

---

[4] Id.

[5] *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, 265 Ga. 645, 647 (458 SE2d 632) (1995).

[6] Although evidence shows Jones was an at-will employee, he could not be lawfully dismissed for constitutionally protected speech. *Rankin v. McPherson*, 483 U. S. 378, 383 (107 SC 2891, 97 LE2d 315) (1987).

States, and [(2) that] the defendant acted under color of state law."[7] There are four stages to a § 1983 action brought for violating a plaintiff's First Amendment rights.

> At the first stage, the court determines the threshold issue raised in *Pickering* [*v. Bd. of Ed.*],[8] whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." The court examines the content, form, and context of the employee's speech to determine whether it addresses a matter of public concern. Second, if the speech addresses a matter of public concern, the court then applies the second prong of *Pickering*, the balancing test, weighing the employee's first amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Again, the context and circumstances of the employee's speech must be considered. If the public employee prevails on the balancing test, the fact-finder determines whether the employee's speech played a "substantial part" in the government's decision to demote or discharge the employee. Fourth, if the employee prevails by showing that the speech was a substantial motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that "it would have reached the same decision . . . even in the absence of the protected conduct." This fourth stage has been referred to as a "but for" test; the employer must show that "its legitimate reason, standing alone, would have induced it to make the same decision."[9]

In *Morris v. Crow*,[10] the Court of Appeals for the Eleventh Circuit considered whether an officer's report describing an accident involving another officer constituted protected speech.

> Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of "public" concern. In essence, we must determine the purpose of the employee's speech, that is, "whether the speech at issue was made primarily in

---

[7] (Punctuation omitted.) *Poss v. Moreland*, 253 Ga. 730, 731 (324 SE2d 456) (1985).

[8] 391 U. S. 563 (88 SC 1731, 20 LE2d 811) (1968).

[9] (Citations omitted.) *Bryson v. City of Waycross*, 888 F2d 1562, 1565-1566 (11th Cir. 1989).

[10] 142 F3d 1379 (11th Cir. 1998).

the employee's role as citizen, or primarily in the role of employee."[11]

The *Morris* court decided that the officer's report was not constitutionally protected speech. We reach the same conclusion here with respect to Jones's speech concerning the internal investigation. Jones's duties as the Director of Public Safety included reporting to Barnabei. Jones considered internal investigations to be part of his job, and he had previously conducted such investigations with ASU approval. Jones made no attempt to bring the reports of the investigated officers' wrongdoing to public light, and his only investigation-related contact with outside parties was with the district attorney and the Georgia Bureau of Investigation. We conclude that because Jones's speech was made primarily in his role as an employee and not as a citizen, the speech is not constitutionally protected.[12] It follows that the trial court correctly granted summary judgment to the defendants on Jones's § 1983 claim.

*Oladeinde v. City of Birmingham,*[13] relied upon by the defendants, is distinguishable. *Oladeinde* concerned a police officer who saw two other officers examining records related to the arrest of the mayor's daughter.[14] The officer reported her observation to her captain, and asked that she be allowed to report the event to the district attorney in connection with an ongoing investigation into allegations that the police chief had tampered with arrest records.[15] The captain refused, and the officer complained that she was subjected to retaliation for her speech. The Court of Appeals for the Eleventh Circuit found that, unlike in *Morris*, the officer's speech was motivated by a desire to bring wrongdoing to light.[16] Here, Jones's speech concerning the investigation of the ASU officers was part of the customary duties of his employment.

3. The trial court granted summary judgment on Jones's claim for violation of his rights to free speech[17] and due process of law[18] under the Georgia Constitution. As Jones does not argue these claims in his appellate brief, they are deemed abandoned.[19]

---

[11] (Citations omitted.) Id. at 1382.

[12] See also *Gonzalez v. City of Chicago*, 239 F3d 939, 942 (7th Cir. 2001) ("Speech which is made in all respects as part of the employee's job duties is generally not the protected expression of the public employee."). Compare *Baldassare v. New Jersey*, 250 F3d 188 (3rd Cir. 2001) (internal investigation a matter of public concern).

[13] 230 F3d 1275 (11th Cir. 2000).

[14] Id. at 1291.

[15] Id. at 1292.

[16] Id.

[17] Ga. Const. 1983, Art. I, Sec. I, Par. IV; Art. I, Sec. I, Par. IX.

[18] Ga. Const. 1983, Art. I, Sec. I, Par. I; Art. I, Sec. I, Par. II.

[19] Court of Appeals Rule 27 (c) (2).

4. Jones contends the trial court erred in granting summary judgment to the defendants on his claim under OCGA § 45-1-4, the "whistleblower" statute. We agree that the trial court erred in granting summary judgment to the Board with respect to this claim, but we affirm the grant of summary judgment to Barnabei and Bloodworth.

> OCGA § 45-1-4 prohibits public employers from threatening or taking any personnel action as a reprisal against public employees who complain [or provide information] about fraud, waste, and abuse in state programs and operations. The statute gives public employees the right to bring an action in superior court to have the retaliatory action set aside.[20]

The Board does not dispute that Jones is a public employee of a state agency for purposes of the statute.

OCGA § 45-1-4 applies to the receipt by a public employer from any public employee of "complaints or information" concerning "the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations under the jurisdiction of such public employer."[21] The information disclosed by Jones to Barnabei related to thefts from ASU by members of its security employees. This information concerned fraud in a state operation under ASU's jurisdiction, and it was disclosed by a public employee to a public employer.

OCGA § 45-1-4 (d) provides that

> No action against any public employee shall be taken or threatened by any public employer who has authority to take, direct others to take, recommend, or approve any personnel action as a reprisal for making a complaint or disclosing information to the public employer unless the complaint was made or the information was disclosed with the knowledge that it was false or with willful disregard for its truth or falsity.

A jury issue exists regarding whether "action" was taken against Jones for purposes of OCGA § 45-1-4 (d). Barnabei deposed that Jones was "terminated." Barnabei made it clear to Jones that he would be fired if he did not submit his resignation. While we have

---

[20] (Footnotes omitted.) *North Ga. Regional Educational Svc. Agency v. Weaver*, 272 Ga. 289, 290 (527 SE2d 864) (2000).

[21] OCGA § 45-1-4 (b).

held that for purposes of due process analysis, resignations by public employees are deemed to be voluntary, the context of that analysis is whether the employee has given up the right to a hearing.[22] Here, the context is whether the employer has taken adverse personnel action against the employee, and the answer to that inquiry is in the affirmative.

Jones contends that a trier of fact must determine if ASU took adverse personnel action against him in reprisal for his investigation into the employee thefts. The only direct evidence of record is that Jones was terminated because he was verbally abusive to his secretary. In order to avoid summary judgment, Jones must show that the record provides circumstantial evidence that his termination was a matter of reprisal.

> Circumstantial evidence may be sufficient to create a jury issue in the face of direct evidence to the contrary. Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.[23]

We conclude that the record contains at least some circumstantial evidence that Jones was dismissed in reprisal for his investigation into the ASU officers.[24] First, Jones shows a close proximity in time between the investigation and Barnabei's request for his resignation. Jones's investigation of Bescey and Goble led to their arrests in late January 1999. Barnabei asked Jones to resign on March 12, 1999, during his investigation of Arrington. Barnabei required Jones to turn in his police vehicle, gun, badge, and radio, and stopped further investigation by Jones.

Second, Jones averred that Barnabei interfered with the investigation by demanding that Jones not pursue reports that stolen ASU uniforms were in the possession of Richmond County marshals. Jones also averred that Barnabei ordered him not to use certain videotaped evidence, and that Barnabei told Jones not to question Arrington "just days" after Jones asserted that Arrington was alleg-

---

[22] *Jones v. Chatham County*, 223 Ga. App. 455, 456 (1) (477 SE2d 889) (1996).

[23] (Footnote omitted.) *Furlong v. Dyal*, 246 Ga. App. 122, 123-124 (1) (539 SE2d 836) (2000).

[24] See, e.g., *Ulrich v. City and County of San Francisco*, 308 F3d 968, 980 (9th Cir. 2002) (circumstantial evidence may link reprisal to speech).

edly implicated in wrongdoing. Jones refuted Barnabei's testimony that he instructed Jones to "do things the right way."

Third, a trier of fact could conclude that the reasons given by Barnabei for Jones's dismissal were pretextual. In his affidavit, Jones expressly denied screaming or raising his voice at a subordinate employee in February or March 1999. Jones informed Barnabei of his version of his encounter with the employee.

For the foregoing reasons, we conclude that Jones has come forward with some circumstantial evidence that he was terminated in reprisal for disclosing information of fraud in connection with his internal investigation of ASU employees. A jury should be allowed to consider Jones's claim under OCGA § 45-1-4.

The remedy under the "whistleblower" statute is limited to the setting aside of the retaliatory action against Jones.[25] Because Jones has no remedy against the individual defendants in their personal capacities, we affirm the grant of summary judgment to Barnabei and Bloodworth.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JULY 1, 2003.

*Adam J. Conti, Lara Cullinane-Smith*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Stephen E. Curry*, for appellees.