A10A2342. GILMER COUNTY BOARD OF TAX ASSESSORS
v. McHUGH et al.

(709 SE2d 311)

PHIPPS, Presiding Judge.

In this tax appeal, the Gilmer County Board of Tax Assessors (BTA) challenges the superior court's judgment setting the value for improved residential real property owned by Emory and Sherry McHugh at $291,000. Finding no error in the superior court's ruling, we affirm.

The evidence showed that, pursuant to OCGA § 48-5-311, the McHughs pursued a tax appeal of their 2008 tax assessment to the Gilmer County Board of Equalization (BOE) and then to the superior court. At a bench trial before the superior court, they presented expert opinion testimony that the fair market value of their property was $291,000. They also presented expert opinion testimony that residential properties in the county were not being uniformly assessed, due to the BTA's misapplication of an "absorption rate." Expert witnesses testified that, correctly applied, the absorption rate was a method for determining the fair market value of certain types of residential properties (undeveloped, developer-owned properties), but that the manner in which the BTA had applied the absorption rate to those types of properties did not produce estimates of fair market values, resulting in a lack of uniformity countywide in assessing the broader class of residential properties. In addition, the McHughs elicited testimony that the BTA had inconsistently applied a "location adjustment" to properties within their subdivision, resulting in their property being given a higher value than other, similarly-situated properties. The BTA

presented contrary evidence concerning the fair market value of the McHughs' property, the uniformity of assessment of residential properties in the county, and the BTA's use of absorption rates and location adjustments in assessing property values.

After the trial, the superior court entered an order setting the property's fair market value at $291,000. The court based this ruling in part on its conclusion that the BTA had not uniformly assessed residential properties in the county. In support of its conclusion that uniformity had not been shown, the court found that the BTA had misapplied absorption rates in a manner that produced assessments for some properties that were less than fair market value. The court also found that the BTA had employed the location adjustment arbitrarily, so as to treat similarly situated properties differently within the McHughs' subdivision.

1. Contesting the court's judgment, the BTA argues that "a taxpayer who owns an improved lot within a subdivision may not contest uniformity by contending that the tax assessment of the developer of the subdivision who owns vacant lots has been under-assessed."

We find no merit in the BTA's claim that the superior court erred in allowing the McHughs to challenge the uniformity of their tax assessment. Although "a taxpayer does not . . . have standing to dispute decisions of the [state revenue] commissioner with regard to county tax digests,"[1] OCGA § 48-5-311 expressly allows a taxpayer to raise matters of uniformity of assessment in a tax appeal.[2]

The BTA characterizes the McHughs' uniformity challenge as a claim that another taxpayer (a developer who owned undeveloped property within the McHughs' subdivision) was underassessed, rather than a claim that the McHughs themselves were assessed for more than their property's fair market value. It cites *Blackmon v. Cobb County-Marietta Water Auth.*[3] for the proposition that a "taxpayer cannot protect himself against a legal and proper demand for his own taxes, by alleging that another taxpayer has been assessed for taxation in a way to render his taxes less than they ought to be under a proper administration of the law."[4] But we have declined to apply the proposition expressed in *Blackmon* where a taxpayer "did not contest uniformity by showing the amount of taxes paid by one

---

[1] *Hill v. Hall County Bd. of Tax Assessors*, 275 Ga. App. 504, 505 (621 SE2d 517) (2005) (footnote omitted).

[2] OCGA § 48-5-311 (e) (1); see *Glynn County Bd. of Tax Assessors v. Haller*, 273 Ga. 649, 650 (3) (543 SE2d 699) (2001); *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, 265 Ga. 645, 646 (458 SE2d 632) (1995).

[3] 126 Ga. App. 459 (191 SE2d 128) (1972).

[4] Id. at 462 (2) (citation and punctuation omitted).

or two other taxpayers[,] [but instead] based its case upon the amount of taxes paid by numerous other taxpayers."[5]

In this case, the McHughs did not base their uniformity challenge solely upon the amount of taxes paid by the specific developer who owned property within their subdivision; they also based their challenge upon the amount of taxes paid by numerous other taxpayers in the county, to whose properties the McHughs contended an absorption rate had been misapplied. Evidence was presented that absorption rates had been applied to approximately 2,800 properties within the county, that the BTA's method of applying the absorption rates led to assessments that did not reflect those properties' fair market values, and that this practice resulted in a lack of uniformity in assessing residential properties — a class that included the McHughs' property — within the county. The McHughs were entitled, in their tax appeal, to challenge uniformity in this manner, and the superior court properly considered the evidence presented thereon.[6]

2. The BTA argues that "a board of tax assessors may use a different method to address vacant lots owned by the developer of a subdivision from the method used to assess improved lots within the subdivision." It further argues that "a board of tax assessors may assign different location factors to different parcels of property within a subdivision based upon the specific characteristics of each parcel." The superior court, however, did not rule on whether these practices were or were not authorized; it ruled that, in this particular case, the BTA failed to meet its burden of proof regarding the fair market value of the McHughs' property and the uniformity of their property assessment.[7]

An appeal of a decision of a Board of Equalization to the superior court under OCGA § 48-5-311 is a de novo action in which a Board of

---

[5] *Gwinnett County Bd. of Tax Assessors v. Ackerman/Indian Trail Assn.*, 198 Ga. App. 723, 725 (2) (402 SE2d 794) (1991), overruled on other grounds, *Fulton County Bd. of Tax Assessors v. Nat. Biscuit Co.*, 296 Ga. App. 884, 885-886 (676 SE2d 41) (2009).

[6] See *Ackerman*, supra; see also OCGA § 48-5-311 (d) (2) (allowing for the presentation of evidence on whether the property involved in a tax appeal had been uniformly assessed with other property included in the tax digest); *Cohran v. Paulding County Bd. of Tax Assessors*, 212 Ga. App. 880, 881 (443 SE2d 519) (1994) (to the extent the issue of uniformity pertained to the assessed value of the taxpayer's property, it was proper for evidence to be presented on the issue and considered by the superior court); *Monroe County Bd. of Tax Assessors v. Remick*, 165 Ga. App. 616, 620-621 (3) (300 SE2d 203) (1983) (affirming superior court's remand of tax appeal to board of tax assessors for reassessment where superior court did not have before it sufficient facts upon which to rule on issue of uniformity).

[7] See generally *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 91 (701 SE2d 472) (2010) (although no particular appraisal method is required to determine fair market value, a board of tax assessors cannot act with unlimited discretion in assessing properties; valuations must be just and fair between all taxpayers, and methods used cannot be arbitrary or unreasonable).

Tax Assessors bears the burden of proving, by a preponderance of the evidence, its opinions of value and the validity of its proposed assessment.[8] In such an action, "[j]ust and fair valuation of property is a question to be determined by the factfinder, here, the trial court. On appellate review, the trial court's determination must be affirmed unless it is clearly erroneous."[9]

An appraiser gave expert opinion testimony that the fair market value of the McHughs' property was $291,000. Other expert witnesses opined that the county employed appraisal methods in manners that systemically produced incorrect or arbitrary estimates of fair market value for residential properties, resulting in a lack of uniformity in that particular class of properties.[10] Given this evidence, it was not clearly erroneous for the superior court to conclude that the BTA had not shown uniformity regarding the McHughs' property or for the court to set the fair market value of their property at $291,000.[11]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 21, 2011 —
RECONSIDERATION DENIED APRIL 6, 2011 — 

*Fox, Chandler, Homans, Hicks & McKinnon, Joseph A. Homans,* for appellant.

*McNally, Fox, Grant & Davenport, Dennis A. Davenport,* for appellees.

---

[8] See OCGA § 48-5-311 (g) (3); see also *Nat. Biscuit Co.,* supra at 885, n. 1 (OCGA § 48-5-311 (g) (3) was amended in 1999 to impose the burden of proof requirement).

[9] *J. C. Penney Co. v. Richmond County Bd. of Tax Assessors,* 233 Ga. App. 399, 400-401 (504 SE2d 201) (1998) (citations and punctuation omitted); see *Hill,* supra at 504.

[10] Compare *Smith v. Elbert County Bd. of Tax Assessors,* 292 Ga. App. 417, 418 (2) (664 SE2d 786) (2008) (upholding board of tax assessors' use of challenged methodology where it was demonstrated that methodology resulted in determination of fair market value).

[11] See *Ackerman,* supra at 724. Compare *Hill,* supra at 505 (where board of tax assessors presented evidence that all properties were appraised on a mass basis and the taxpayer's property was not singled out or appraised differently, and the taxpayer presented no evidence to the contrary, the superior court did not clearly err in ruling that uniformity of assessment had been shown).