A08A1516. MORRISON v. CLABORN et al.
(669 SE2d 492)

MILLER, Judge.

David Morrison appeals from the trial court's orders on the parties' cross-motions for summary judgment denying Morrison's motion and granting summary judgment in favor of appellees, members of the Jasper County Board of Tax Assessors (collectively, the "Board"), thereby upholding the Board's determination that three parcels of agricultural property Morrison owns in Jasper County, Georgia, did not qualify as "bona fide conservation use property" under OCGA § 48-5-7.4. Morrison claims the trial court misinterpreted OCGA § 48-5-7.4 when it agreed with the Board that his properties cannot qualify as bona fide conservation use properties, because they are subject to a restrictive covenant preventing

---

swine and poultry operations. Finding that the trial court correctly interpreted OCGA § 48-5-7.4, we affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Holmes v. Achor Center*, 242 Ga. App. 887 (1) (531 SE2d 773) (2000).

So viewed, the record shows that Morrison's three properties were approved by the Board as bona fide conservation use properties eligible for "current use assessment."[1] The applications for current use assessment were filed initially on November 19, 2004, November 23, 2004, and March 22, 2004, respectively. At the time of the initial applications, Morrison had a partial ownership interest in two of the parcels and no ownership interest in the third. The 2004 applications were approved on or about September 29, 2004 and December 2, 2004.

Morrison subsequently acquired sole ownership of all three parcels and applied for continuation of the current use assessment on the properties. Morrison filed three applications on February 9, 2005, and the Board approved them on or about November 1, 2005. At the time of the initial and continuation applications, Morrison's properties were subject to restrictive covenants prohibiting poultry or swine operations.

Morrison was a member of the Board from approximately July 2004 through April 2005, although the record is not entirely clear on the exact time period he served. While on the Board, Morrison participated in decisions regarding applications for current use assessment. Morrison testified that he offered to recuse himself when the Board voted on the applications for his properties. According to Morrison, the chairman told the Board that he would take the applications home, review them, and pull out any that he saw a problem with. Morrison stated that, at the next meeting, the chairman presented a group of applications that were not problematic in his view, and Morrison voted on those applications.

In June 2006, the Board asked its chief appraiser to review the conservation use properties in the county to determine if any of them were subject to restrictive covenants. A member of the chief appraiser's staff identified approximately 40 properties, including Morri-

---

[1] Under OCGA § 48-5-7.4, owners of "bona fide conservation use property," including property used for certain agricultural purposes and meeting other statutory criteria and conditions, may apply to the county board of tax assessors for "current use assessment" of their property for purposes of calculating ad valorem taxes. If the application is granted, the property is assessed for tax purposes at 40 percent of its "current use value" instead of 40 percent of its "fair market value," OCGA § 48-5-7 (a), (c.2), resulting in tax savings. See *Ga.-Pacific Corp. v. Talbot County Bd. of Tax Assessors*, 241 Ga. App. 444, 444-445 (526 SE2d 914) (1999) (describing operation of OCGA § 48-5-7.4).

son's, that were subject to restrictive covenants prohibiting certain agricultural activities. After this information was presented to the Board, the Board voted to remove the conservation use designation from all of these properties. The Board notified Morrison by letter dated July 21, 2006 that the current use assessment had been removed from his properties.

On August 17, 2006, Morrison filed his complaint for declaratory judgment requesting that the trial court (1) declare that the Board's decision to remove the current use assessment was null and void and that Morrison's property remains entitled to current use assessment and (2) temporarily and permanently enjoin the Board from removing the current use assessment. On December 14, 2006, Morrison filed a motion for summary judgment.

The Board responded by filing an amended answer and counterclaim and its own cross-motion for summary judgment. The Board's counterclaim prayed for an order declaring that Morrison's properties do not qualify as bona fide conservation use property due to the restrictive covenants; that to the extent Morrison voted to approve his own property for current use assessment, the approval is void; and that subject to administrative appeal, the Board may remove a current use assessment if it discovers that the property did not meet the statutory requirements at the time the application was filed.

On January 30, 2008, the trial court issued orders denying Morrison's motion for summary judgment and granting the Board's motion, holding that the Board's construction of OCGA § 48-5-7.4 "must prevail."

1. As a threshold matter, the Board argues that we may affirm the trial court's orders on the ground that Morrison's conflict of interest in voting on the applications for current use assessment on his properties voided the Board's approval of the applications. See *Dept. of Transp. v. Brooks*, 254 Ga. 303, 317 (8) (328 SE2d 705) (1985) (describing circumstances in which a conflict of interest will void act of government body). While we agree that Morrison had a conflict of interest and should not have voted on applications for property he owned (see OCGA § 45-10-3 (9)), we need not address the Board's argument in light of our holding in Division 2, infra, that the trial court correctly granted summary judgment in the Board's favor on the ground that, under the terms of OCGA § 48-5-7.4 (b) (5), Morrison was not entitled to current use assessment.[2] Likewise, we need not address the Board's argument that it was entitled to

---

[2] We also note that the record is not entirely clear as to which of his own applications Morrison voted on. For example, the continuation applications have an approval date of November 1, 2005, but Morrison may not have been on the Board on that date.

summary judgment based on its defenses of equitable estoppel and unclean hands.

2. Morrison claims that the trial court misconstrued OCGA § 48-5-7.4 and that the restrictive covenants applicable to his property do not render the property ineligible for current use assessment. We disagree.

In removing the current use assessment from Morrison's property, the Board relied on OCGA § 48-5-7.4 (b) (5), which provided at the time: "No property shall qualify as bona fide conservation use property if such property is at the time of application for current use assessment subject to a restrictive covenant which prohibits the use of the property for any purpose described in subparagraph (a) (1) (E) of this Code section." OCGA § 48-5-7.4 (a) (1) (E), which is located in the subsection of the statute describing the types of agricultural property that may qualify as bona fide conservation use property, states in turn:

Such property shall, if otherwise qualified, include, but not be limited to, property used for:

(i) Raising, harvesting, or storing crops;

(ii) Feeding, breeding, or managing livestock or poultry;

(iii) Producing plants, trees, fowl, or animals, including without limitation the production of fish or wildlife by maintaining not less than ten acres of wildlife habitat either in its natural state or under management, which shall be deemed a type of agriculture; . . . or

(iv) Production of aquaculture, horticulture, floriculture, forestry, dairy, livestock, poultry, and aparian products.

The issue in dispute is whether the Board is correct that Morrison's property cannot qualify as bona fide conservation use property because restrictive covenants prevent him from conducting some, but not all, of the activities described in OCGA § 48-5-7.4 (a) (1) (E) on his property. The resolution of this issue turns on the meaning of the word "any" in OCGA § 48-5-7.4 (b) (5). The Board argues that "any" means "any one" such that if a restrictive covenant prohibits use of the property for any single purpose described in OCGA § 48-5-7.4 (a) (1) (E), the property cannot be bona fide conservation use property. Thus, in the Board's view, Morrison's property is disqualified because he cannot use the property for one of the uses described in OCGA § 48-5-7.4 (a) (1) (E), namely, swine and

poultry operations. Morrison, on the other hand, asserts that the word "any" means "all" and that his property may qualify as bona fide conservation use property so long as restrictive covenants do not restrict him from conducting *all* of the activities described in OCGA § 48-5-7.4 (a) (1) (E).

The first step in our analysis of this issue of statutory construction is to examine the plain statutory language. *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 791-792 (3) (498 SE2d 297) (1998) ("In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms and conducts no further inquiry.") (citations and punctuation omitted). Here, the operative word — "any" — is susceptible of both meanings offered by the parties. See *Madison Ltd. v. Price*, 146 Ga. App. 837, 842 (2) (a) (247 SE2d 523) (1978) ("[T]he word 'any' may be used to mean 'all' or 'one out of several.'") (citation omitted). Because the meaning of the statute is not plain on its face, we must resort to other rules of statutory construction, which, in our view, require us to adopt the interpretation of OCGA § 48-5-7.4 (b) (5) advanced by the Board.

First, "it is well established that laws granting exemption from taxation must be construed strictly in favor of the taxing authority." (Citations and punctuation omitted.) *Ethicon, Inc. v. Ga. Dept. of Revenue*, 291 Ga. App. 130 (661 SE2d 170) (2008). This rule requires us to construe any ambiguity in OCGA § 48-5-7.4 (b) (5) in the Board's favor. *Ga. Dept. of Revenue v. Owens Corning*, 283 Ga. 489, 490 (660 SE2d 719) (2008) ("[I]n cases of ambiguity, the statute must be interpreted in favor of the tax, not the exemption."). We reject Morrison's argument that this rule of strict construction is inapplicable because OCGA § 48-5-7.4 does not confer complete immunity from ad valorem taxes but instead only allows the taxpayer the benefit of a preferential assessment. Morrison's position is contrary to *Effingham County Bd. of Tax Assessors v. Samwilka, Inc.*, 278 Ga. App. 521 (629 SE2d 501) (2006), in which we applied the rule of strict construction to OCGA § 48-5-7.4.

Even if there were merit to Morrison's argument that OCGA § 48-5-7.4 is not a true tax exemption, the statute would still be subject to the broader rule that "legislative exceptions in statutes are to be strictly construed and should be applied only so far as their language fairly warrants." (Citations and punctuation omitted.) *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 704 (544 SE2d 158) (2001). OCGA § 48-5-7.4 creates an exception to the general rule in Georgia that tangible property value

is assessed at 40 percent of fair market value, and, as such, the statute must be construed in the Board's favor. See OCGA § 48-5-7 (a) and (c.2).

Second, we agree with the Board that accepting Morrison's interpretation of OCGA § 48-5-7.4 (b) (5) would run contrary to the rule of statutory construction that requires us "to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Blue Moon Cycle v. Jenkins*, 281 Ga. 863, 864 (642 SE2d 637) (2007). The description of qualifying conservation uses contained in OCGA § 48-5-7.4 (a) (1) (E) is broad and open-ended, stating that bona fide conservation use property shall "include but not be limited to" property used for the purposes set forth in subsections (i)-(iv). If property is disqualified from eligibility as bona fide conservation use property only if a restrictive covenant bars *all* of the conceivable qualifying uses within the scope of OCGA § 48-5-7.4 (a) (1) (E), a restrictive covenant would rarely, if ever, violate OCGA § 48-5-7.4 (b) (5), and that subsection would serve little or no purpose.

Morrison urges us to avoid this dilemma by construing OCGA § 48-5-7.4 (b) (5) to mean that property is disqualified as bona fide conservation use property only if the actual qualifying use of the land (for instance, in Morrison's case, timber production and wildlife habitat) violates a restrictive covenant. The words of the statute are not susceptible to this construction, however, and this Court has authority only to interpret statutes, not to rewrite them. *Resourcing Svcs. Atlanta, LLC v. Ga. Dept. of Revenue*, 288 Ga. App. 532, 534-535 (654 SE2d 649) (2007).

Changing the law is a duty for the General Assembly to undertake, and, as Morrison notes, the General Assembly in fact amended OCGA § 48-5-7.4 (b) (5), effective May 14, 2008 in order to, inter alia, "change certain provisions regarding bona fide conservation use property which is subject to restrictive covenants." House Bill 1081, available at *http://www.legis.state.ga.us/legis/2007_08/ fulltext/hb1081.htm*. OCGA § 48-5-7.4 (b) (5) now provides:

> No property shall qualify as bona fide conservation use property if such property is at the time of application for current use assessment subject to a restrictive covenant which prohibits the use of the property for the specific purpose described in subparagraph (a) (1) (E) of this Code section for which bona fide conservation use qualification is sought.

We find that the recent amendment to OCGA § 48-5-7.4 (b) (5) worked a change in the law and that we have no similar authority to

rewrite the statute in effect prior to May 14, 2008.

For the reasons set forth above, we affirm the orders of the trial court denying Morrison's motion for summary judgment and granting the Board's cross-motion for summary judgment.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2008.

*Greer, Stansfield & Turner, Robert H. Stansfield*, for appellant.
*Sell & Melton, Kevin T. Brown*, for appellee.