**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 24, 2012**

# In the Court of Appeals of Georgia

A12A0952, A12A1070. MORGAN COUNTY BOARD OF TAX
    ASSESSORS v. WARD; and vice versa.

ADAMS, Judge.

These appeals arise from the determination by the Morgan County Board of

Tax Assessors (the "Tax Board") that Nancy W. Ward was in breach of a

conservation use covenant and that she would be assessed a penalty because of the

breach. The Tax Board notified Ward of the alleged breach and penalty, and Ward

appealed that determination to the Morgan County Board of Equalization, which

ruled in favor of the Tax Board. Ward then pursued a de novo appeal to the superior

court from the decision of the Board of Equalization. Both Ward and the Tax Board

filed cross-motions for summary judgment, and the superior court denied both

motions.  Following our grant of their applications for interlocutory appeal, the Tax

Board, in Case No. A12A0952, and Ward, in Case No. A12A1070, appeal the trial court's denial of their cross-motions for summary judgment. We agree with Ward that the Tax Board failed to meet its threshold obligation to provide her with notice and an opportunity to correct the alleged breach, and that she was therefore entitled to summary judgment. Accordingly, we affirm in Case No. A12A0952 and reverse in Case No. A12A1070.

To succeed on a motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). In reviewing the grant or denial of a motion for summary judgment, "we conduct a de novo review of the law and the evidence, and we view the evidence in the light most favorable to the nonmovant." *Muscogee County Bd. of Tax Assessors v. Pace Indus.*, 307 Ga. App. 532 (705 SE2d 678) (2011) (punctuation and footnotes omitted). "On de novo review, we owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts." (Citation and punctuation omitted.) *Delta Air Lines v. Clayton County Bd. of Tax Assessors*, 246 Ga. App. 225, 226 (539 SE2d 905) (2000).

2

The record shows that on March 24, 2004, Ward applied with the Tax Board to enroll 124.29 acres of Morgan County property (the "Property") as conservation use property for purposes of OCGA § 48-5-7.4. The qualifying use was the production of livestock. The Tax Board approved the application effective January 1, 2004 through December 31, 2013, pursuant to which Ward entered into a "Conservation Use Assessment of Agricultural Property Covenant Agreement." On March 30, 2005, Ward conveyed approximately 27 acres of the Property (the "Divided Parcel") to Randall W. York. On the same day, York transferred the Divided Parcel to Montana Partners Limited, Inc.

On March 17, 2006, Montana Partners applied to enter into a conservation use covenant with respect to 27.263 acres of real property, which corresponded to the size of the Divided Parcel. The Tax Board approved Montana Partners's application, but the map and parcel number of the property identified in the application did not correspond to that of the Divided Parcel. Also in March 2006, Ward filed another "Application for Conservation Use Assessment of Agricultural Property," which was approved by the Tax Board. The application covered the 97 acres of the Property not conveyed to York. According to Ward, the covenant she signed ran from January 1, 2006 through December 31, 2015. As recorded with the clerk of the superior court,

3

however,[1] the date of the covenant ran from January 1, 2004 through December 31, 2013.

On August 23, 2007, Montana Partners sold the Divided Parcel to Montana Development, Inc. Montana Development applied to continue the covenant. The Tax Board determined that Montana Development could not continue the covenant and refused to approve the application. On February 3, 2009, the Tax Board notified Ward of a breach of her covenant "when your property was split to Montana Development Inc."[2] and of a penalty therefor.

Ward appealed the Tax Board's determination of breach and penalty to the Morgan County Board of Equalization, which found the property to be in breach of the covenant. Ward appealed the decision of the Board of Equalization to the superior court. Ward and the Tax Board filed cross-motions for summary judgment, and the trial court denied both motions.

---

[1] Under OCGA § 48-5-7.4 (j) (1), the clerk of the superior court is directed to file and index approved applications for current use assessment in the real property records maintained in the clerk's office.

[2] The notice also stated that the issuance of a business license to a company at the property's physical address was a basis for the breach, but the Tax Board does not now contend that the issuance of the business license was a valid basis for the breach.

Ward contends that the Tax Board was not entitled to assess any penalty against her because it failed to provide her with the mandatory notice of breach and opportunity to cure. We agree.

OCGA § 48-5-7.4 (d) requires that, in order for property to qualify for current use assessment,[3]

> the owner of such property [must] agree[] by covenant with the appropriate taxing authority to maintain the eligible property in bona fide qualifying use for a period of ten years beginning on the first day of January of the year in which such property qualifies for such current use assessment and ending on the last day of December of the final year of the covenant period.

As noted above, Ward entered into such a covenant with respect to the Property, effective January 1, 2004 through December 31, 2013. Pertinent to this dispute, if all or part of property subject to a conservation use covenant is acquired by a person who

---

[3] Owners of "bona fide conservation use property" for purposes of OCGA § 48-5-7.4 may apply to the county board of tax assessors for "current use assessment" of their property for purposes of calculating ad valorem taxes. See *Morrison v. Claborn*, 294 Ga. App. 508, 509 n. 1 (669 SE2d 492) (2008). "If the application is granted, the property is assessed for tax purposes at 40 percent of its 'current use value' instead of 40 percent of its 'fair market value,' OCGA § 48-5-7 (a), (c) (2), resulting in tax savings." Id. (Citation omitted).

breaches the original covenant, the transferor is subject to penalties.[4] See OCGA §
48-5-7.4 (l).

As Ward shows, the Tax Board is required to notify an owner in writing in case
of an alleged breach of a conservation use covenant. See OCGA § 48-5-7.4 (k.1).
Further,

> [t]he owner shall have a period of 30 days from the date of such notice
> to cease and desist the activity alleged in the notice to be in breach of
> the covenant or to remediate or correct the condition or conditions
> alleged in the notice to be in breach of the covenant.

Id. After an inspection of the property, "the board of tax assessors shall notify the
owner that such activity or activities have or have not properly ceased or that the
condition or conditions have or have not been remediated or corrected." Id.

---

[4] "If a breach occurs on all or part of the property that was the subject of an
original covenant and was transferred in accordance with OCGA § 48-5-7.4 (i), then
the breach shall be deemed to have occurred on all of the property that was the
subject of the original covenant. The penalty shall be assessed pro rata against each
of the parties to the covenant in proportion to the tax benefit enjoyed by each during
the life of the original covenant." Ga. Comp. R. & Regs. 560-11-6-.06 (2). The
amount of the penalty is "twice the difference between the total amount of tax paid
pursuant to current use assessment under this Code section and the total amount of
taxes which would otherwise have been due under this chapter for each completed or
partially completed year of the covenant period." OCGA § 48-5-7.4 (l).

In this case, the Tax Board sent a notice to Montana Development informing it of the alleged breach and of the opportunity to cure but did not notify Ward that she had an opportunity to correct the breach. Rather, Ward only received the second notice contemplated by OCGA § 48-5-7.4 (k.1). The Tax Board informed Ward that "such activity or activities have or have not properly ceased or that the condition or conditions have or have not been remediated or corrected." The Tax Board also informed Ward that a penalty "shall be assessed" and the amount of the penalty. Ward argues that the decision of the Tax Board was ineffective because she was never given notice and an opportunity to cure the breach. The Tax Board responds that Ward waived any claim of improper notice because she failed to raise the issue before the Board of Equalization; that the Tax Board complied with OCGA § 48-5-7.4 (k.1) by sending proper notice to Montana Development, which owned the Divided Parcel at the time of the breach; and that in this case the notice requirement is moot because Ward has not shown that she has tried to correct the breach or could correct the breach.

OCGA § 48-5-7.4 (k.1) provides that an owner may "appeal the decision of the board of tax assessors . . . in the same manner that other property tax appeals are made pursuant to [OCGA] 48-5-311." Here, the Tax Board's decision finds a breach

7

by Ward and an associated penalty, references OCGA § 48-5-7.4 (k.1), and notifies Ward of her appeal rights under OCGA § 48-5-311. Ward appealed the Tax Board's decision to the Board of Equalization, which noted that the issues "raised in this appeal were Breach CUVA with penalty" and found that "the property is in breach."

Under OCGA § 48-5-311, once the Board of Equalization has rendered its decision, "[t]he taxpayer . . . may appeal decisions of the county board of equalization . . . to the superior court of the county in which the property lies." OCGA § 48-5-311 (g) (1). Although the appeal is de novo, "only those decisions of the Board of Equalization on questions presented to it or incident thereto may be relitigated in the superior court." *Camp v. Boggs*, 240 Ga. 127, 128 (1) (239 SE2d 530) (1977). See *Mundy v. Clayton County Tax Assessors*, 146 Ga. App. 473 (2) (246 SE2d 479) (1978) (accord).

Ward's notice of appeal stated the basis for her appeal to the Board of Equalization, and she did not allege insufficiency of notice. However, there was no requirement that Ward specifically state the grounds for her appeal to the Board of Equalization.[5] See OCGA § 48-5-311 (e) (2009).[6] The appeal statute also

[5] In contrast, a notice of appeal from a board of equalization to the superior court "shall specifically state the grounds for appeal." OCGA § 48-5-311 (g) (2) (2009). In this case, Ward raised the notice issue in superior court in her amended

8

contemplated an appeal from an assessment "as to matters of taxability, uniformity of assessment, and value . . . ." OCGA § 48-5-311 (e) (1) (a) (2009). While switching from one ground of appeal before the board of equalization to another before the superior court has not been allowed, that does not appear to have occurred here. Compare *Hall County Board of Tax Assessors v. Northeast Georgia Health System, Inc.*, __ Ga. App. __, (730 SE2d 715) (2012) (appellant could not litigate value of property and uniformity of tax digest in superior court when those issues were not disputed before the board of tax assessors and the board of equalization). Rather, since the Board of Equalization acknowledged that the issue before it was "breach . . . *with penalty*," we conclude that the issue of taxability was before the Board of Equalization. Further, the action of the Tax Board reviewed by the Board of Equalization specifically invoked OCGA § 48-5-7.4 (k.1). The issue of proper notice under OCGA § 48-5-7.4 (k.1) and the Department of Revenue regulations

notice of appeal. See *Fulton County Bd. of Tax Assessors v. Layton*, 261 Ga. App. 356 (582 SE2d 520) (2003) (notice of appeal to superior court is amendable).

[6] This Code section was amended in 1990, following *Camp*, to remove a requirement that the written objection specifically state the grounds for appeal. See Ga. L. 1990, pp. 1361-1362, § 1; *Cobb County Board of Tax Assessors v. Marietta Educational Garden Center, Inc.*, 239 Ga. App. 740, 746 (521 SE2d 892) (1999) (Ruffin, J., concurring specially).

implementing OCGA § 48-5-7.4 was at least "incident to" the decision of the Board of Equalization. See *Camp*, supra, 240 at 128 (1). For these reasons, we conclude that Ward could litigate the question of taxability in the superior court's de novo review of the Board of Equalization's decision, including whether the lack of notice barred the imposition of any penalty.

We now turn to the Tax Board's contention that it was not required to give Ward notice and an opportunity to cure, and that the notice requirement is moot. As noted above, OCGA § 48-5-7.4 (k.1) contemplates that in case of an alleged breach the "owner" will be notified by the board of tax assessors and be given a 30-day period to correct the breach. Although the Tax Board now suggests that Ward was not an "owner" under this provision, notwithstanding that it sent her a notice referencing OCGA § 48-5-7.4 (k.1), Department of Revenue regulations implementing OCGA § 48-5-7.4 provide that

> [b]efore a penalty is assessed, notice shall be provided to the taxpayer by the board of tax assessors that the covenant has been breached. This notice shall include the specific grounds of the breach, provide to the taxpayer notice to cease and desist the alleged breach activity, and notify the taxpayer that they have thirty (30) days to correct the breach.[7]

---

[7] Ga. Comp. R. & Regs. r. 560-11-6-.06 (5).

10

Ga. Comp. R. & Regs. r. 560-11-6-.06 (5).[8] Since Ward is the "taxpayer" who was being assessed a penalty, the Tax Board was required to give Ward notice and an opportunity to cure the alleged breach. This it did not do. It follows that the Tax Board's decision in finding a breach with penalty was premature. Further, the Department's regulation does not contemplate whether it is practicable for the taxpayer to correct an alleged breach, only that the taxpayer be given notice and opportunity to do so. It was certainly not a great burden for the Tax Board to comply with the notice requirement. Accordingly, we cannot say the Tax Board's failure to give Ward the required notice was moot.[9]

In light of the foregoing, we conclude that Ward was entitled to summary judgment and, accordingly, reverse the trial court's order denying Ward's motion for summary judgment. The trial court's denial of the Tax Board's motion for summary judgment is affirmed.

---

[8] The Department has the power to make and publish reasonable rules and regulations for the implementation and enforcement of OCGA § 48-5-7.4. See OCGA § 48-5-7.4 (y).

[9] As Ward has not been given notice and an opportunity to correct the alleged breach, we need not address the remaining claims of error, which go to the question of whether Ward breached her conservation use covenant agreement and, if so, the date of that breach.

11

*Judgment affirmed in Case No. A12A0952. Judgment reversed in Case No. A12A1070. Barnes, P. J., and McFadden, J., concur.*