**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0710. SLIVKA v. NELSON et al.

BOGGS, Judge.

Gene Slivka appeals from the superior court's order granting summary judgment in favor of the McIntosh County Board of Commissioners and Wanda Nelson, the tax commissioner for McIntosh County (collectively "the County"). She contends that the trial court erred by concluding that the conservation use covenant was breached and by failing to conclude that the County's breach of covenant determination was void based upon a lack of notice. For the reasons explained below, we affirm.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the record and all reasonable

inferences in favor of the nonmoving party." (Citation and punctuation omitted.) *Effingham County v. Samwilka, Inc.*, 278 Ga. App. 521 (629 SE2d 501) (2006). So viewed, the record shows that in 2004, Slivka applied for and was granted a conservation use covenant[1] for a tract of land. On June 6, 2007, the McIntosh County Board of Commissioners approved Slivka's request to rezone the property from Residential Agricultural District ("AR") to a Single Family Residential District ("R-1").

On July 12, 2007, Slivka conveyed the property to Greenfields Investments LLC ("Greenfields"), and the warranty deed was recorded on July 13, 2007. On the same day the warranty was recorded, the County sent a notice to Slivka and Greenfields of a "breach of covenant penalty." On August 8, 2007, the County sent a document titled "Calculation of Breach of Conservation Use Penalty" to Slivka and

---

[1] Under OCGA § 48-5-7.4, qualified property owners can enter into a covenant with the taxing authority to maintain the property for conservation use for a period of ten years. OCGA § 48-5-7.4 (d) This Code section "does not confer complete immunity from ad valorem taxes but instead only allows the taxpayer the benefit of preferential assessment." *Morrison v. Claborn*, 294 Ga. App. 508, 512 (2) (669 SE2d 492) (2008). It "creates an exception to the general rule that the tangible property value is assessed at 40 percent of fair market value." Id. at 513 (2). Instead, the property is assessed at 40 percent of its current use value. OCGA § 48-5-7 (c.2).

Greenfields which listed the date of the breach as July 12, 2007.[2] On August 16, 2007, Slivka wrote the County the following in response to the notice of penalty:

> Please be advised under article #6 of the conservation use agreement that transfer of property does not create a breach of the covenant as long as the entity to which it is transferred maintains its conservation use. Greenfields, LLC, the new owner, is assuming our conservation usage, They will continue to maintain the property in its present state. They are aware that should they develop the property they will breach the covenant and be subject to a breach of covenant penalty. . . . I request that the "penalty notice" be withdrawn

Greenfields, however, paid the penalty in full before Slivka's letter was sent to the County.

On June 2, 2009, Slivka foreclosed on the security deed used by Greenfields to purchase the property. On November 8, 2010, the County approved Slivka's application for a conservation use covenant for the land at issue. In February 2011, the County issued a "Delinquent Tax Notice" for the years 2008, 2009, and 2010 to

---

[2] In a later-filed discovery response, the County asserted that it "did not take any position that a breach had occurred due to a mere transfer of ownership. The county took the position that a breach occurred because Greenfields took affirmative steps to develop the property into residential subdivisions."

3

Slivka. The notice stated that an execution would be issued if the delinquent taxes were not paid.[3] Slivka paid the overdue amount under protest.

After Slivka received no response to his subsequent request for refund, he filed a complaint seeking a refund under OCGA § 48-5-380 (c), prejudgment interest, and attorney fees and expenses under OCGA § 13-6-11. Both parties subsequently moved for summary judgment in their favor, and the trial court granted summary judgment in the County's favor based upon the following reasoning:

> Slivka contends that no breach of covenant occurred because the land itself was never disturbed and the actual use of the property never changed. However, Slivka sold the property to a limited liability company in 2007, which is not an eligible owner of conservation use property. OCGA § 48-5-7.4 (a) (1) (C) and 48-5-7.4 (i). This court does not believe that the county is estopped from relying upon these provisions because it did not cite these provisions in its notice of breach of covenant penalty, or otherwise inform Greenfields that these provisions were applicable.

---

[3] A lien for delinquent ad valorem taxes arises at the time the taxes become due and are unpaid, OCGA § 48-2-56 (a), and subsequent owners are not protected from a writ of fieri facias (or tax execution) on the property for the delinquent ad valorem taxes of a previous owner. See OCGA § 48-3-3; OCGA § 48-5-127 (6); *Nat. Tax Funding v. Harragon Co.*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003).

Slivka also contends that he is entitled to summary judgment for the separate and independent reason that the county in 2007 failed to provide him notice of his right to appeal, as required by OCGA § 48-5-306 (b) (2). However, Greenfields voluntarily paid the penalty in 2007, and Greenfields owned the property between July 12, 2007 and June 2, 2009. When Slivka obtained the property by foreclosure, he took it subject to all unpaid taxes.

Finally for the reasons explained by [the] County in its brief, it is entitled to summary judgment because the taxes and penalties involved were not "erroneously or illegally assessed and collected." OCGA § 48-5-380.

1. Slivka contends that the trial court erred by concluding that his complaint for a refund does not fall within the ambit of OCGA § 48-5-380. The County asserts that Slivka should have asserted an appeal through OCGA § 48-5-311.

Taxpayers generally have two avenues for challenging an improper tax assessment: (1) the appeal process in OCGA § 48-5-311, and (2) the refund procedure in OCGA § 48-5-380. These distinct remedies, however, serve different purposes. An appeal under OCGA § 48-5-311 provides "the most expeditious resolution of a taxpayer's dissatisfaction with an assessment, preferably before taxes are paid." In contrast, an OCGA § 48-5-380 refund action has been described as a "procedure to protect taxpayers from later-discovered defects in the assessment process which have resulted in taxes being erroneously or illegally

5

assessed and collected." Moreover, the refund procedure is available only to correct errors of fact or law that caused erroneous or illegal taxation. It cannot be used to address "a claim based on mere dissatisfaction with an assessment, or on an assertion that the assessors, although using correct procedures, did not take into account matters which the taxpayer believes should have been considered."

(Citations, punctuation and footnotes omitted.) *Fulton County v. Marani*, 299 Ga. App. 580, 585 (4) (a) (683 SE2d 136) (2009).

The Supreme Court of Georgia has held "while the appeal process of § 48-5-311 is available to address *any* asserted error in an ad valorem real property tax assessment, the refund process established by § 48-5-380 is intended *only* to correct errors of fact or law which have resulted in erroneous or illegal taxation." (Emphasis supplied.) *Gwinnett County v. Gwinnett Ltd. Partnership*, 265 Ga. 645, 646-647 (458 SE2d 632) (1995). The rationale for this holding is that making "the two very different procedures available in every case without regard to the underlying basis of the taxpayer's challenge would render the appeal process under OCGA § 48-5-311, with its short time periods, meaningless." Id. at 646. Therefore,

the determinative factor in deciding whether an action seeking a refund of ad valorem real property taxes may be maintained is not the general nature of the ground asserted, but the underlying facts supporting the

6

asserted ground. If the taxpayer alleges that the assessment is based on matters of fact in the record which are inaccurate, or that the assessment was reached by the use of illegal procedures, then the taxpayer has asserted a claim that the taxes were "erroneously or illegally assessed and collected," which is what § 48-5-380 addresses.

Id. at 647. The Supreme Court has further explained:

An illegal tax assessment is one imposed without authority or in violation of federal or state law. An erroneous tax assessment is harder to define; it includes clerical errors, assessments of tax-exempt property, and assessments based on the wrong millage rate, but not assessments based on the county's failure to consider every relevant fact in establishing an assessed value.

(Citation and punctuation omitted.) *Nat. Health Network v. Fulton County*, 270 Ga. 724, 727 (2) (514 SE2d 422) (1999). Other examples of appropriate cases for a tax refund claim under OCGA § 48-5-380 include, but are not limited to: taxes assessed in violation of federal or state law; duplicate payments; payment to wrong taxing authority; collection of taxes for property located in another county; and collection of taxes for property owned by a different person. Id. at 727-728 (2).

After carefully considering the nature of Slivka's claim, we conclude that he has not brought a cognizable claim for an "erroneous or illegal" tax assessment under

7

OCGA § 48-5-380.[4] He does not claim that the assessment was based upon inaccurate facts in the record. Instead, he asserts that the County "did not take into account matters which [he] believes should have been considered," *Gwinnett County*, supra, 265 Ga. at 647, in determining whether a breach of the conservation use covenant occurred; specifically, whether the actual use of the property changed, as well as the County's failure to investigate Greenfields' ownership structure. And his arguments regarding notice fail to establish an "erroneous or illegal" tax assessment.[5] See OCGA

---

[4] As the issue is not before us, we express no opinion as to whether Slivka has a right to appeal under OCGA § 48-5-311. See *Oconee County v. Thomas*, 282 Ga. 422, 423 (1) (651 SE2d 45) (2007).

[5] Slivka makes no allegation that Greenfields relied upon any defect in the County's notice of penalty to its detriment. See *Oxford v. City of Waycross*, 241 Ga. 159, 160-161 (2) (243 SE2d 881) (1978) ("failure of the board to comply strictly with the requirements for the contents of the notice does not invalidate the notice, unless the defect in the notice in fact misled the taxpayer to his detriment"). And the revenue regulation cited by Slivka did not apply to the particular notice at issue in this case. See Ga. Comp. R. & Reg. § 560-11-6-.04 (applies to failure to apply for a continuation of use assessment in the year following the transfer of ownership). Finally, the cases Slivka relies upon do not establish an erroneous or illegal assessment based upon the facts of this particular case. Our decision in *Morgan County v. Ward*, 318 Ga. App. 186, 191 (733 SE2d 470) (2012), addressed a notice requirement enacted in 2008, and the notice at issue in this case was provided in 2007. Compare OCGA § 48-5-7.4 (k.1) and OCGA § 48-5-7.4 (2007). And in *Oconee County*, supra, the Supreme Court of Georgia held merely that a board of a tax assessors cannot refuse to consider a taxpayer's untimely appeal when it failed to provide information about appeal procedures in its notice. 282 Ga. at 424-425 (2).

8

§ 48-5-380. We therefore affirm the trial court's grant of summary judgment in favor of the County. See id. (affirming trial court's grant of summary judgment to the County on ground that plaintiff's claim was "not one cognizable as a refund action under OCGA § 48-5-380"); *Nat. Health Network*, supra (affirming trial court's grant of summary judgment to County because plaintiff did not present a claim for erroneous or illegal assessment under OCGA § 48-5-380).

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*