**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**December 15, 2020**

# In the Court of Appeals of Georgia

A20A1898. RICE et al. v. FULTON COUNTY, GEORGIA et al.

BARNES, Presiding Judge.

The plaintiffs brought this putative class action on behalf of all Fulton County homeowners who purchased their homes in 2015 and 2016, seeking a refund of ad valorem property taxes under OCGA § 48-5-380 from Fulton County and several of its municipalities[1] based on alleged illegal assessments of their properties. In their complaint, as amended, the plaintiffs alleged that the Fulton County Board of Tax Assessors ("Board") conducted illegal assessments of their properties under state

---

[1] The municipalities are the City of Atlanta, City of Alpharetta, City of Johns Creek, City of Milton, City of Roswell, City of Sandy Springs, City of Chattahoochee Hills, City of College Park, City of East Point, City of Fairburn, City of Hapeville, City of Palmetto, City of Union City, and City of South Fulton. The City of Mountain Park was originally named as a defendant but was later voluntarily dismissed from the case.

constitutional and statutory law by intentionally singling out their recently sold

properties for reappraisal at the increased sales price while leaving the assessed

values of comparable unsold properties undisturbed. The trial court subsequently

granted the defendants' motions to dismiss the plaintiffs' amended complaint for

failure to state a claim upon which relief could be granted, concluding that the

plaintiffs had failed to state a tax refund claim under OCGA § 48-5-380 and instead

should have pursued a tax appeal under a different statute. The plaintiffs now appeal

from the trial court's dismissal order. For the reasons discussed more fully below, we

reverse.

We review de novo a trial court's grant of a motion to dismiss for failure to

state a claim upon which relief can be granted. *Southstar Energy Svcs. v. Ellison*, 286

Ga. 709, 710 (1) (691 SE2d 203) (2010).

> Under OCGA § 9-11-12 (b) (6), a motion to dismiss for failure to state
> a claim upon which relief can be granted should not be sustained unless
> (1) the allegations of the complaint disclose with certainty that the
> claimant would not be entitled to relief under any state of provable facts
> asserted in support thereof; and (2) the movant establishes that the
> claimant could not possibly introduce evidence within the framework of
> the complaint sufficient to warrant a grant of the relief sought. In
> deciding a motion to dismiss, all pleadings are to be construed most

2

favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation and punctuation omitted.) *Renton v. Watson*, 319 Ga. App. 896, 897 (739 SE2d 19) (2013). See *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012).

Guided by these principles, we turn to the plaintiffs' amended complaint, which alleged as follows. The Board assesses all real property located in Fulton County, and those assessments are then used by the defendants to generate tax bills for property owners. The named plaintiffs and putative class members are homeowners who purchased real property in Fulton County in 2015 or 2016. The plaintiffs paid property taxes in 2016 and 2017 based on assessments of their properties by the Board that the plaintiffs allege were illegal.

More specifically, the amended complaint alleged that the Board, in assessing the fair market values of the plaintiffs' properties for the 2016 and 2017 tax years, did not follow its customary appraisal methodology and instead increased the assessed value of the plaintiffs' properties to equal the sales prices from 2015 or 2016. According to the amended complaint, except in "rare instances," the Board did not reassess the values of comparable residential properties that had not been sold. The amended complaint further alleged that, as a result of the Board's divergent treatment

3

of sold and unsold properties, the plaintiffs were required to pay property taxes to the defendants for the tax years of 2016 and 2017 that were significantly higher than the taxes paid by owners of similarly situated residential properties that did not sell in 2015 or 2016.

In 2018, the plaintiffs filed their putative class action complaint against Fulton County seeking property tax refunds pursuant to OCGA § 48-5-380.[2] The plaintiffs thereafter twice amended their complaint and added additional plaintiffs and several municipalities within Fulton County as defendants. The plaintiffs alleged in their complaint, as amended, that by appraising their properties in 2016 and 2017 based on sales price without reappraising similarly situated residential properties that had not been sold in 2015 and 2016, the Board violated the Uniformity Clause of the Georgia

---

[2] OCGA § 48-5-380 (a) (1) provides:
> (a) As provided in this Code section, each county and municipality shall refund to taxpayers any and all taxes and license fees:
>> (1) Which are determined to have been erroneously or illegally assessed and collected from the taxpayers under the laws of this state or under the resolutions or ordinances of any county or municipality[.]

Under subsections (b) and (c) of the statute, taxpayers either may file a refund claim with the governing authority of the county or municipality within a certain time period, or may proceed directly to filing suit for a refund. See OCGA § 48-5-380 (b), (c); *City of Dublin School Dist. v. MMT Holdings*, 346 Ga. App. 546, 547 (1) (816 SE2d 494) (2018) (discussing framework of the tax refund statute).

Constitution,[3] the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and the equalization requirement imposed by OCGA § 48-5-306 (a).[4] Consequently, the plaintiffs alleged that they were due refunds from the defendants of the taxes illegally assessed in 2016 and 2017, in addition to pre- and post-judgment interest and attorney fees and expenses under OCGA § 13-6-11.

The defendants moved to dismiss the plaintiffs' amended complaint, asserting that the plaintiffs had failed to state a claim for a tax refund under OCGA § 48-5-380.

---

[3] The Uniformity Clause provides in relevant part:
> (a) All taxes shall be levied and collected under general laws and for public purposes only. Except as otherwise provided in [other subparagraphs of the Clause], all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.

Ga. Const. of 1983, Art. VII, Sec. 1, Para. III (a).

[4] OCGA § 48-5-306 (a) provides in pertinent part:
> The [county] board [of tax assessors] shall see that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between the individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer's proportionate share of taxes.

5

According to the defendants, the plaintiffs were limited to challenging the Board's actions through the tax appeal process set out in OCGA § 48-5-311, which the plaintiffs had failed to do.[5]

Following a hearing, the trial court granted the defendants' motions to dismiss in April 2020. The trial court concluded that the facts as alleged in the amended complaint failed to state a cognizable claim for an illegal assessment of the plaintiffs' properties so as to bring the claim within the ambit of the tax refund statute, OCGA

---

[5] OCGA § 48-5-311 sets out a statutory scheme for appealing tax assessments. As explained by our Supreme Court,

> the statutory scheme outlined in OCGA § 48-5-311 does not provide for a single, unified appeal. Instead, in OCGA § 48-5-311 (e)(1)(A)(i)-(iv) the [statute] enumerates multiple administrative avenues for appealing the original tax assessment by the county board of tax assessors, after an initial appeal to the county board itself under OCGA § 48-5-311 (e)(2)(A). If the taxpayer is dissatisfied with the result of this initial appeal, three options are available, depending upon the property and the issues appealed: appeal to the county board of equalization under OCGA § 48-5-311 (e)(2)(C); appeal to an arbitrator under OCGA § 48-5-311 (f); or appeal to a hearing officer under OCGA § 48-5-311 (e.1). Each method of appeal prescribes a different process in considerable detail. Only at the conclusion of one of these three separate administrative appeals do the taxpayer and the county board of tax assessors have the option of appealing to the superior court under OCGA § 48-5-311 (g).

(Emphasis omitted.) *Hall County Bd. of Tax Assessors v. Westrec Properties*, 303 Ga. 69, 74 (2) (809 SE2d 780) (2018).

6

§ 48-5-380.[6] The trial court further concluded that the gravamen of the plaintiffs' allegations was that the Board, in assessing the value of their properties for the 2016 and 2017 tax years, had failed to consider other factors beyond the recent sale price, and the court ruled that such a claim could only be pursued through the tax appeal process set forth in OCGA § 48-5-311.

On appeal from the dismissal order, the plaintiffs argue that the trial court erred in holding that their complaint failed to state a claim for a tax refund under OCGA § 48-5-380 and that they thus were limited to pursuing a tax appeal under OCGA § 48-5-311. We agree.

> Taxpayers generally have two avenues for challenging an improper tax assessment: (1) the appeal process in OCGA § 48-5-311, and (2) the refund procedure in OCGA § 48-5-380. These distinct remedies, however, serve different purposes. An appeal under OCGA § 48-5-311 provides the most expeditious resolution of a taxpayer's dissatisfaction with an assessment, preferably before taxes are paid. In contrast, an OCGA § 48-5-380 refund action . . . [provides a ] procedure

---

[6] In its dismissal order, the trial court addressed the plaintiffs' arguments regarding the Uniformity Clause and OCGA § 48-5-306 (a), but the court did not address the plaintiffs' Equal Protection Clause argument. Because the trial court did not rule on whether the Board's alleged actions would violate the Equal Protection Clause, we do not consider that question on appeal. See *City of Decatur v. DeKalb County*, 284 Ga. 434, 438 (2) (668 SE2d 247) (2008).

to protect taxpayers from later-discovered defects in the assessment process which have resulted in taxes being erroneously or illegally assessed and collected.

(Citation and punctuation omitted.) *Slivka v. Nelson*, 328 Ga. App. 468, 470 (1) (762 SE2d 162) (2014).

In distinguishing between OCGA § 48-5-311 and OCGA § 48-5-380, our Supreme Court has held that

> [a]lthough a taxpayer may raise issues of valuation, uniformity, and equalization under both statutes, . . . the taxpayer should assert any error in the assessment of the real property in an appeal proceeding under § 48-5-311 whereas the refund action under § 48-5-380 is reserved for claims of factual or legal error that have resulted in erroneous or illegal taxation.

*Nat. Health Network v. Fulton County*, 270 Ga. 724, 726 (1) (514 SE2d 422) (1999). See *Gwinnett County v. Gwinnett I L.P.*, 265 Ga. 645, 646-647 (458 SE2d 632) (1995). To determine whether a claim can be brought as a tax refund claim under OCGA § 48-5-380, courts must look "not [at] the general nature of the ground asserted, but the underlying facts supporting the asserted ground." *Gwinnett County*, 265 Ga. at 647. In this regard,

8

[a] claim based on mere dissatisfaction with an assessment, or on an assertion that the assessors, although using correct procedures, did not take into account matters which the taxpayer believes should have been considered (e.g., different comparable sales for the purpose of establishing value), is not . . . one which asserts that an assessment is erroneous or illegal within the meaning of § 48-5-380.

Id. In contrast, "[i]f the taxpayer alleges that the assessment is based on matters of fact in the record which are inaccurate, or that the assessment was reached by the use of illegal procedures, then the taxpayer has asserted a claim that the taxes were 'erroneously or illegally assessed and collected'" under OCGA § 48-5-380. Id. Furthermore, in *Nat. Health Network*, 270 Ga. at 727 (2), the Supreme Court pointed out that an "illegal" tax assessment that can be pursued under OCGA § 48-5-380 includes the circumstance where "a taxing authority assessed and collected taxes in violation of federal or state law." (Footnotes omitted.) And, as an example of such a circumstance, the Supreme Court cited to *Griggs v. Greene*, 230 Ga. 257, 266 (3) (197 SE2d 116) (1973),[7] a case from that Court holding that the Uniformity Clause had been violated when county tax digests were adjusted by impermissibly raising

---

[7] *Griggs* was subsequently abrogated in part on other grounds as stated in *SJN Properties v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2) (b) (ii), n. 7 (770 SE2d 832) (2015).

assessments according to sub-classes of property. See *Nat. Health Network*, 270 Ga. at 727 (2), n. 20.

Here, in their amended complaint, the plaintiffs did not simply express dissatisfaction with the assessed value of their properties or, as suggested by the trial court, merely allege that the Board, using correct procedures, failed to take into account other factors that should have been considered as part of the assessments. Compare *Trans Link Motor Express v. Dougherty County*, 265 Ga. App. 10, 12 (592 SE2d 859) (2003) (taxpayer could not pursue tax refund claim under OCGA § 48-5-380 based on allegation that county collected the wrong amount of taxes because it failed to take into account interstate mileage as part of tax assessment); *Parian Lodge v. DeKalb County*, 225 Ga. App. 853, 855 (1) (485 SE2d 545) (1997) (plaintiff could not pursue tax refund claim under OCGA § 48-5-380 where plaintiff "merely asserts that the 1991 assessed value [of the property] established the fair market value of the property in 1990"). Rather, viewed most favorably to the plaintiffs, the amended complaint alleged that the Board engaged in "sales chasing"[8] by selectively targeting

[8] "'Sales chasing,' also known as selective reappraisal, is the practice of selectively changing values for properties that have been sold, while leaving other values alone." *County of Douglas v. Nebraska Tax Equalization and Review Comm.*, 635 NW2d 413, 419 (Neb. 2001). See *Big Foot Stores v. Franklin Township Assessor*, 919 NE2d 621, 623, n. 5 (Ind. T.C. 2009). According to one jurisdiction,

10

recently sold properties for reappraisal at the increased sales price while leaving the

assessed values of similarly situated unsold properties unchanged. See generally

*Callaway v. Carswell*, 240 Ga. 579, 583 (2) (242 SE2d 103) (1978) (noting that

question of whether county "could reassess property piecemeal" was different from

question regarding valuation of the taxpayers' property). According to the amended

complaint, such a procedure, predicated on the intentional targeting of a subclass of

property owners for increased assessments and taken without regard to establishing

---

the practice of sales chasing "creates inequities between properties and, unless adjusted for, renders sales ratio studies invalid." *County of Douglas*, 635 NW2d at 423. See *County of Douglas v. Nebraska Tax Equalization & Review Comm.*, 894 NW2d 308, 321 (Neb. 2017) ("Sales chasing makes a sales ratio study unreliable because the assessed values of sold properties are no longer representative of the assessed values of all the other properties in the study area."). Another jurisdiction referred to the practice of sales chasing as the "'welcome stranger' pattern" of spot assessment because under the practice, "[t]he 'new' owner–the 'stranger'–will pay higher taxes proportionately than the owner of a long-held parcel who 'welcomes' the fact that he consequently pays lower taxes." (Citation and punctuation omitted.) *Township of West Milford v. Van Decker*, 576 A2d 881, 885 (N. J. 1990). See *Orban v. Alexandria Township*, 21 N.J. Tax 1, 11-12 (N.J. T.C. 2003) ("The practical effect of spot assessment [of the "welcome stranger" variety] is that recent purchasers have their property reassessed on the basis of current market values, whereas properties of equivalent market value that have not recently been sold have their existing assessments continued from year to year. Assuming that property values are increasing, the new owner will have a greater proportionate tax burden than an owner who has held property of equal market value over a long period of time.").

uniformity and equalization between taxpayers with like properties, violates the Uniformity Clause of the Georgia Constitution and the equalization requirement imposed by OCGA § 48-5-306 (a).

We cannot say that within the framework of the amended complaint, the plaintiffs would be unable to come forward with evidence that the Board used an illegal procedure and violated state law in its assessment of the plaintiffs' properties for the 2016 and 2017 tax years. See *Champion Papers v. Williams*, 221 Ga. 345, 346 (144 SE2d 514) (1965) (holding that "attempt to increase revenue by arbitrary and discriminatory assessments against one group of taxpayers without consideration of an increase for all others" violated well established rule that the "[t]axation of all kinds of property of the same class must be uniform and by the same standard of valuation, equally with other taxable property of the same class"); *Dade County v. Eldridge*, 229 Ga. App. 401, 401 (494 SE2d 106) (1997) (concluding that "it is illegal for a taxing authority simply to pick and choose particular pieces of property to assess and reassess without regard to uniformity, proportionality and equalization among properties of the same class").[9] Indeed, courts from several other jurisdictions have

---

[9] See also *Griggs*, 230 Ga. at 266 (3) (Uniformity Clause violated where tangible property was divided into different sub-classes and then different percentage adjustments were applied to individual assessments according to sub-class, with "no

concluded that selective reappraisals and sales chasing are illegal and violate the principle of uniformity.[10] Contrary to the conclusion reached by the trial court, the plaintiffs stated a claim under the tax refund statute, OCGA § 48-5-380.

In reaching this conclusion, we are mindful that our Supreme Court has held that "county boards of tax assessors are not required to use any particular appraisal approach or method when determining the fair market value of property for purposes of ad valorem taxation." *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 91 (701 SE2d 472) (2010). Our Supreme Court also has held that "the utilization of different methods to determine fair market value does not contravene the Constitution

---

adjustments at all as to still other sub-classes"); *Thorpe v. Benham*, 161 Ga. App. 116, 116 (1) (289 SE2d 275) (1982) (spot reappraisal of subset of properties within city limits that resulted in increased property taxes violated equalization statute, where the tax "assessors do not claim that the tax structure as a whole was considered, that there was any attempt to equalize the tax burden throughout the municipality, that there was any plan for an overall reappraisal, or that there were not throughout the city other residential properties as least equally underassessed").

[10] See *Township of West Milford*, 576 A2d at 884-886; *Ernest W. Hahn, Inc. v. County Assessor for Bernalillo County*, 592 P2d 965, 967-969 (N. M. 1978); *Penn Phillips Lands v. State Tax Comm.*, 430 P2d 349, 351-352 (Or. 1967); *Picerne v. DiPrete*, 428 A2d 1074, 1077-1079 (R.I. 1981); *Town of Castleton v. Parento*, 988 A2d 158, 160-164 (Vt. 2009). "[T]hese cases explain that such assessment practices cannot be upheld, as they arbitrarily, but purposefully, subject the owners of comparable properties to both disparate treatment and disproportionate rates of taxation." *Big Foot Stores*, 919 NE2d at 625, n. 8.

13

or the laws of Georgia" and has noted, as an example, that "real property recently sold may be valued at sales price, while other property is valued by comparable sales." *Dougherty County Bd. of Tax Assessors v. Burt Realty Co.*, 250 Ga. 467, 469 (298 SE2d 475) (1983). Additionally, Georgia's tax statutes and regulations contemplate that the recent sales price of a property may be used to determine its fair market value for tax assessment purposes under certain circumstances. See OCGA § 48-5-2 (3);[11] Ga. Comp. R. & Regs. r. 560-11-10-.09 (4) (b) (1) (i).[12]

---

[11] OCGA § 48-5-2 (3) provides in pertinent part:
"Fair market value of property" means the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale. . . . Notwithstanding any other provision of this chapter to the contrary, the transaction amount of the most recent arm's length, bona fide sale in any year shall be the maximum allowable fair market value for the next taxable year.

[12] Ga. Comp. R. & Regs. r. 560-11-10-.09 (4) (b) (1) (i) provides that when a county appraisal staff uses the sales comparison approach for valuing property,
[a] bona fide sale of a subject property should be carefully analyzed by the appraisal staff to determine if it is an accurate indicator of such subject property's fair market value. When such a sale is supported by sufficient other sales of similar property to reasonably estimate the market, the appraisal staff shall consider the sale as the best evidence of fair market value. In the absence of such a sale of the subject, sales prices of comparable properties shall be considered the best evidence of fair market value.

Nevertheless, "[t]he law still requires valuations to be just and fair between all taxpayers of the county," *Sherman*, 288 Ga. at 91, and "the duty to assess at full value is not supreme but yields to the duty to avoid discrimination" among taxpayers. (Citation and punctuation omitted.) *McLennan v. Undercofler*, 222 Ga. 302, 307 (149 SE2d 705) (1966). And, here, the amended complaint did not simply allege that the Board erred by using the recent sales price to value the plaintiffs properties and/or used different valuation methods when reassessing sold and unsold property for the 2016 and 2017 tax years. Instead, as previously noted, the amended complaint, construed in favor of the plaintiffs, alleged that the Board intentionally singled out for reassessment and increased taxation only that small group of taxpayers who purchased real property in 2015 and 2016, while leaving undisturbed the assessments of other property in the same class that had not been sold, thereby creating significant tax disparities between similarly situated taxpayers. Consequently, the plaintiffs' allegations in this case go beyond a claim that the Board improperly relied on sales prices for valuation or used different valuation methods when reappraising different types of property. Compare *Dougherty County Bd. of Tax Assessors*, 250 Ga. at 468-469 (Uniformity Clause not violated when board used one valuation method for appraising residential property held for resale and another method for appraising

15

merchants' inventory);*Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726, 728 (2) (279 SE2d 223) (1981) (Uniformity Clause not violated when board "utilize[d] a 'blue book' method of valuation in determining the fair market value of an aircraft for ad valorem tax purposes while utilizing a cost-less-depreciation method in determining the fair market value of other types of tangible personal property").

For these reasons, the defendants failed to demonstrate that the plaintiffs could not possibly introduce evidence within the framework of the amended complaint entitling them to a tax refund for tax years 2016 and 2017 under OCGA § 48-5-380. We therefore reverse the trial court's grant of the defendants' motion to dismiss the plaintiffs' amended complaint for failure to state a claim upon which relief could be granted.

*Judgment reversed. Gobeil and Pipkin, JJ., concur*.